[No. D057005. Fourth Dist., Div. One. Feb. 18, 2011.]

JOSE GOMES, Plaintiff and Appellant, v.
COUNTRYWIDE HOME LOANS, INC., et al., Defendants and
Respondents.

**COUNSEL**

Gersten Law Group and Ehud Gersten for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Philip Barilovits and Jon D. Ives for Defendants and Respondents.

**OPINION**

**IRION, J.**—Jose Gomes appeals from a judgment entered following the trial court's order sustaining, without leave to amend, a demurrer filed by defendants Countrywide Home Loans, Inc. (Countrywide); Mortgage Electronic Registration Systems, Inc. (MERS); and ReconTrust Company, N.A. (ReconTrust) (collectively Defendants).

As we will explain, we conclude that the trial court properly sustained the demurrer without leave to amend.

I

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2004 Gomes borrowed $331,000 from lender KB Home Mortgage Company to finance the purchase of real estate. In connection with that transaction, he executed a promissory note (the Note), which was secured by a deed of trust. The deed of trust identifies KB Home Mortgage Company as the "Lender" and identifies MERS as "acting solely as a nominee for Lender and Lender's successors and assigns," and states that "MERS is the beneficiary under this Security Instrument."[1]

The role of MERS is central to the issues in this appeal. As case law explains, "MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members." (*Mortgage Electronic Registration Systems v. Nebraska Dept. of Banking & Finance* (2005) 270 Neb. 529, 530 [704 N.W.2d 784, 785].) "A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system." (*Jackson v. Mortgage Electronic Registration Systems, Inc.* (Minn. 2009) 770 N.W.2d 487, 491.)

The deed of trust that Gomes signed states that "Borrower [(i.e., Gomes)] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ."

Gomes defaulted on his loan payments, and he was mailed a notice of default and election to sell—recorded on March 10, 2009—which initiated a nonjudicial foreclosure process. The notice of default was sent to Gomes by ReconTrust, which identified itself as an agent for MERS. Accompanying the

---

[1] Similarly, the deed of trust states: "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successor and assigns) and the successors and assigns of MERS."

notice of default was a declaration signed by an employee of Countrywide, which apparently was acting as the loan servicer.[2]

In May 2009 Gomes filed a lawsuit against Countrywide, MERS and ReconTrust, alleging several causes of action and attaching as exhibits the deed of trust and the notice of default.

The only causes of action at issue in this appeal are the first and second causes of action, which are asserted against all Defendants.[3]

The first cause of action is titled "Wrongful Initiation of Foreclosure." In that cause of action, Gomes states that he "does not know the identity of the Note's beneficial owner"—as he believes that KB Home Mortgage Company sold it on the secondary mortgage market. He alleges on information and belief that "the person or entity who directed the initiation of the foreclosure process, whether through an agent of MERS or otherwise, was neither the Note's rightful owner nor acting with the rightful owner's authority." In short, the first cause of action alleges, on information and belief, that MERS did not have authority to initiate the foreclosure because the current owner of the Note did not authorize MERS to proceed with the foreclosure. As a remedy, the first cause of action states that Gomes seeks damages in an amount "not less than $25,000."[4]

The second cause of action seeks declaratory relief on the issue of whether "[Civil Code section 2924, subdivision (a)] allows a borrower, before his or her property is sold, to bring a civil action in order to test whether the person electing to sell the property is, or is duly authorized to do so by, the owner of a beneficial interest in it." Although designated a cause of action for declaratory relief, the second cause of action appears to serve simply as a legal argument in support of the first cause of action. Specifically, the second cause of action alleges that section 2924, subdivision (a) provides the legal authority for Gomes to assert the claim he has made in the first cause of action, namely that MERS lacks the authority to initiate the foreclosure process because it was not authorized to do so by the owner of the Note.

---

[2] The deed of trust states that a loan servicer is the entity that "collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations."

[3] The remaining causes of action were for (1) quiet title against Defendants; (2) violation of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788.10 et seq.) against Countrywide; (3) violation of Civil Code section 2943, subdivision (b)(1) against Countrywide; and (4) unfair competition against Countrywide and MERS (Bus. & Prof. Code, § 17200). These causes of action were all disposed of in connection with the demurrer.

[4] The complaint's general prayer for relief also seeks an order rescinding the notice of default, along with other relief, but it is not clear whether those remedies are sought for the first cause of action.

Defendants filed a demurrer. Demurring to the first cause of action, Defendants argued, among other things, that (1) to maintain a cause of action for wrongful foreclosure, Gomes must allege that he is able to tender the full amount due under the loan; (2) California's nonjudicial foreclosure statute sets forth an exhaustive framework that does not provide for the type of relief that Gomes seeks; (3) the terms of the deed of trust authorize MERS to initiate a foreclosure proceeding; and (4) if Gomes is arguing that "he is entitled to avoid foreclosure until a defendant has produced the note," such a claim has been uniformly rejected. Demurring to the second cause of action for declaratory relief, Defendants argued that it was "nothing more than a repeat of the legal theory" asserted in the first cause of action and should be rejected on the same basis.

The trial court sustained the demurrer, without leave to amend, and entered judgment in favor of Defendants.

II

DISCUSSION

A. *Standard of Review*

" 'On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650 [43 Cal.Rptr.3d 434].) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].) In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601].)

Further, "[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . . If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . . The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569], citations omitted (*Schifando*).) "[S]uch a showing can be

made for the first time to the reviewing court . . . ." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 [113 Cal.Rptr.2d 399], citation omitted.)

B. *The Demurrer Was Properly Sustained*

    1. *Gomes Has Not Identified a Legal Basis for an Action to Determine Whether MERS Has Authority to Initiate a Foreclosure Proceeding*

██ California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*).) "These provisions cover every aspect of exercise of the power of sale contained in a deed of trust." (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596].) "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller*, at p. 830.) "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." (*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098; see also *Moeller*, at p. 834 ["It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings."].)[5]

By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated.

---

[5] Although ". . . California courts have repeatedly allowed parties to pursue additional remedies for misconduct arising out of a nonjudicial foreclosure sale when not inconsistent with the policies behind the statutes" (*California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1070 [78 Cal.Rptr.3d 153]), Gomes is not seeking a remedy for misconduct. He is seeking to impose the additional requirement that MERS demonstrate in court that it is authorized to initiate a foreclosure. As we will explain, such a requirement would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. (See *Moeller, supra,* 25 Cal.App.4th at p. 830.)

In his declaratory relief cause of action, Gomes sets forth the purported legal authority for his first cause of action, alleging that Civil Code section 2924, subdivision (a), by "necessary implication," allows for an action to test whether the person initiating the foreclosure has the authority to do so. We reject this argument. Section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate the foreclosure process. However, nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action. (See *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596 [113 Cal.Rptr.3d 498, 236 P.3d 346] [legislative intent, if any, to create a private cause of action is revealed through the language of the statute and its legislative history].) Significantly, "[n]onjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236 [44 Cal.Rptr.2d 352, 900 P.2d 601].) The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.

Gomes cites three federal district court cases—two of which are unpublished—which he says recognize a right to bring a legal challenge to an entity's authority to initiate a foreclosure process. (*Weingartner v. Chase Home Finance, LLC* (D.Nev. 2010) 702 F.Supp.2d 1276 (*Weingartner*); *Castro v. Executive Trustee Services, LLC* (D.Ariz. 2009, Feb. 23, 2009, No. CV-08-2156-PHX-LOA) 2009 U.S.Dist. Lexis 14134 (*Castro*); *Ohlendorf v. American Home Mortgage Servicing* (E.D.Cal., Mar. 31, 2010, No. CIV. S-09-2081 LKK/EFB) 2010 U.S.Dist. Lexis 31098 (*Ohlendorf*).)[6] The cases are not controlling on us and, in any event, they are not on point, as none recognize a cause of action requiring the noteholder's nominee to prove its authority to initiate a foreclosure proceeding. For instance, in *Ohlendorf*, the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process. (*Ohlendorf, supra,* 2010 U.S.Dist. Lexis 31098 at pp. *22–*23.) No such infirmity is alleged here. Moreover, the district court cases from outside of California are

---

[6] "Although we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority." (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6 [107 Cal.Rptr.3d 373], citing Cal. Rules of Court, rule 8.1115.)

inapposite because they do not apply California nonjudicial foreclosure law. The court in *Weingartner, supra*, 702 F.Supp.2d 1276, 1282–1283, allowed a plaintiff's claim for injunctive relief to proceed when he produced evidence that the trustee that initiated the foreclosure was not in fact the trustee at the time and thus could not proceed under Nevada law. In *Castro, supra*, 2009 U.S.Dist. Lexis 14134, the court allowed a claim for declaratory relief to proceed to determine whether the defendants were entitled to enforce a promissory note through nonjudicial foreclosure when the documents before the court indicated that the entities initiating the foreclosure process may not have had the rights of the holder of the note as required by Arizona law. (*Id.* at pp. *15–*16.) It is also significant that in each of these cases, the plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party. Gomes has not asserted *any* factual basis to suspect that MERS lacks authority to proceed with the foreclosure. He simply seeks the right to bring a lawsuit to find out *whether* MERS has such authority. No case law or statute authorizes such a speculative suit.[7]

Gomes appears to acknowledge that California's nonjudicial foreclosure law does not provide for the filing of a lawsuit to determine whether MERS has been authorized by the holder of the Note to initiate a foreclosure. He argues, however, that we should nevertheless interpret the statute to provide for such a right because the "Legislature may not have contemplated or had time to fully respond to the present situation." That argument should be addressed in the first instance to the Legislature, not the courts. Because California's nonjudicial foreclosure statute is unambiguously silent on any right to bring the type of action identified by Gomes, there is no basis for the courts to create such a right. We therefore conclude that the trial court

---

[7] As we understand Gomes's first and second causes of action, he is alleging that MERS might not have been authorized by the current holder of the Note to initiate foreclosure proceedings, and he is entitled to bring a lawsuit to determine whether MERS was in fact authorized. Although we focus on this legal theory in addressing whether the demurrer was properly sustained, we note that certain portions of Gomes's appellate briefing suggest he may be arguing that even if MERS was authorized by the noteholder to initiate a foreclosure, MERS would not have standing to do so. For example, Gomes cites a Kansas case holding that MERS did not have standing to intervene in a judicial foreclosure case. (*Landmark National Bank v. Kesler* (2009) 289 Kan. 528 [216 P.3d 158, 166].) Gomes also contends that other out-of-state cases have found that "MERS' limited role means it lacks independent standing to foreclose, or independent power to convey standing by transferring a note." If, by citing these cases, Gomes means to argue that MERS lacks standing in California to initiate a nonjudicial foreclosure, the argument is without merit because under California law MERS may initiate a foreclosure as the nominee, or agent, of the noteholder. As we have explained, Civil Code section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, *or any of their authorized agents*" may initiate the foreclosure process. (Italics added.)

properly sustained Defendants' demurrer to the first and second causes of action in Gomes's complaint.[8]

### 2. *Gomes Agreed in the Deed of Trust That MERS Is Authorized to Initiate a Foreclosure Proceeding*

As an independent ground for affirming the order sustaining the demurrer, we conclude that even if there was a legal basis for an action to determine whether MERS has authority to initiate a foreclosure proceeding, the deed of trust—which Gomes has attached to his complaint—establishes as a factual matter that his claims lack merit. As stated in the deed of trust, Gomes agreed by executing that document that MERS has the authority to initiate a foreclosure. Specifically, Gomes agreed that "MERS (as nominee for Lender and Lender's successors and assigns) has . . . the right to foreclose and sell the Property." The deed of trust contains no suggestion that the lender or its successors and assigns must provide Gomes with assurances that MERS is authorized to proceed with a foreclosure at the time it is initiated.[9] Gomes's agreement that MERS has the authority to foreclose thus precludes him from pursuing a cause of action premised on the allegation that MERS does not have the authority to do so.

Relying on the terms of the applicable deeds of trust, courts have rejected similar challenges to MERS's authority to foreclose. In *Pantoja v.*

[8] As we upheld the sustaining of the demurrer on another ground, we need not and do not consider whether, as the trial court ruled, the first cause of action fails on the ground that Gomes has not pled that he is prepared to tender the amount owing on the Note. (See *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578 [205 Cal.Rptr. 15] ["It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."].)

[9] The parties debate in their briefing whether MERS should be considered a "beneficiary" of the deed of trust and thus authorized to initiate a foreclosure proceeding, regardless of whether it is authorized by the holder of the note, under the statutory provision stating that the *beneficiary* is entitled to initiate a foreclosure. (Civ. Code, § 2924, subd. (a)(1).) As the parties discuss, some federal district courts have observed that although identified as a "beneficiary" in a deed of trust, MERS is not acting in the role of a beneficiary as that term is commonly used, and that MERS in fact acts as a nominee, and thus an *agent* of the beneficiary. (See, e.g., *Roybal v. Countrywide Home Loans, Inc.* (D.Nev., Dec. 9, 2010, No. 2:10-CV-750-ECR-PAL) 2010 U.S.Dist. Lexis 131287, p. *11 ["there is a near consensus among district courts in this circuit that while MERS does not have standing to foreclose as a beneficiary, because it is not one, it does have standing as an agent of the beneficiary where it is the nominee of the lender, who is the true beneficiary"]; *Weingartner, supra,* 702 F.Supp.2d at p. 1280 ["Calling MERS a 'beneficiary' is both incorrect and unnecessary . . . ," and "[c]ourts often hold that MERS does not have standing as a beneficiary because it is not one, regardless of what a deed of trust says, but that it does have standing as an agent of the beneficiary where it is the nominee of the lender (who is the 'true' beneficiary)."].) However, because Civil Code section 2924, subdivision (a)(1) and the deed of trust permit MERS to initiate foreclosure as a nominee (i.e., agent) of the noteholder, we need not, and do not, decide whether MERS is also a "beneficiary" as that term is used in California's nonjudicial foreclosure statute.

*Countrywide Home Loans, Inc.* (N.D.Cal. 2009) 640 F.Supp.2d 1177, the federal district court pointed out that in the deed of trust, the plaintiff "distinctly granted MERS the right to foreclose through the power of sale provision, giving MERS the right to conduct the foreclosure process under [Civil Code s]ection 2924," and therefore "[s]ince Plaintiff granted MERS the right to foreclose in his contract, his argument that MERS cannot initiate foreclosure proceedings is meritless." (*Id.* at pp. 1189, 1190.) Similarly, another court pointed out that "[u]nder the mortgage contract, MERS has the legal right to foreclose on the debtor's property . . . . MERS is the owner and holder of the note as nominee for the lender, and thus MERS can enforce the note on the lender's behalf." (*Morgera v. Countrywide Home Loans, Inc.* (E.D.Cal., Jan. 12, 2010, No. 2:09-cv-01476-MCE-GGH) 2010 U.S.Dist. Lexis 2037, p. *22, citation omitted.) Following this same approach, we conclude that Gomes's first and second causes of action lack merit for the independent reason that by entering into the deed of trust, Gomes agreed that MERS had the authority to initiate a foreclosure.

### 3. *Gomes Has Not Established That He Can Cure the Defects in His Complaint by Amending*

We must also consider whether Gomes has shown that there is a reasonable probability that he could cure the defects that we have identified in the first and second causes of action. (*Schifando, supra,* 31 Cal.4th at p. 1081.) Gomes contends that he could amend his complaint to "plead more specific theories . . . on information and belief" such as those theories discussed in *Ohlendorf, supra,* 2010 U.S.Dist. Lexis 31098, and *Weingartner, supra,* 702 F.Supp.2d 1276.

To attempt to state a claim as in *Ohlendorf,* Gomes would have to plead that the specific party who initiated the foreclosure process was not the proper party to do so because assignments of the deed of trust were improperly backdated. (*Ohlendorf, supra,* 2010 U.S.Dist. Lexis 31098 at pp. *22–*23.) To conform to the theory pled in *Weingartner,* Gomes would have to plead that a trustee initiated the foreclosure proceeding but was not actually the trustee at the time. (*Weingartner, supra,* 702 F.Supp.2d at p. 1282.) However, Gomes has conceded that he cannot plead facts meeting those scenarios "because respondents have not recorded any assignments" or provided any descriptions of assignments. A " '[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, *if he has information leading him to believe that the allegations are true*' " (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 [67 Cal.Rptr.3d 330, 169 P.3d 559], italics added), and thus a pleading made on information and belief is insufficient if it "merely assert[s] the facts so alleged without alleging such information that 'lead[s] [the plaintiff] to believe that the

allegations are true' " (*id.* at p. 551, fn. 5). Because Gomes has conceded that he has no specific information about assignments of the Note, he would not be able to plead on information and belief, *based on facts leading him to believe they were true*, the theories alleged in *Ohlendorf* and *Weingartner*. We therefore conclude that the trial court properly sustained the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 18, 2011, S191816. Chin, J., did not participate therein.