Filed 12/3/14  Welker v. JPMorgan Chase Bank CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES WELKER,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>    Defendants and Respondents. | G050241<br><br>(Super. Ct. No. INC1104432)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, John G. Evans, Judge.  Affirmed.

James Welker, in pro. per., for Plaintiff and Appellant.

Bryan Cave, Sean D. Muntz, Aileen M. Hunter, and Katherine M. Harrison for Defendants and Respondents JPMorgan Chase Bank, N.A. and EMC Mortgage.

Barrett Daffin Frappier Treder & Weiss, Edward A. Treder, Madeleine K. Lee and Darlene P. Hernandez for Defendant and Respondent NDEx West.

*        *        *

Plaintiff James Welker filed a preemptive suit to challenge a nonjudicial foreclosure of his home. In a 37-page verified complaint, he claimed that Mortgage Electronic Registration System, Inc. (MERS), had rendered most of the home mortgage industry a fraud and that the parties claiming the right to foreclose on his home did not, in fact, have that right. Describing the complaint as "canned" and lacking specific factual allegations, the trial court sustained a demurrer without leave to amend. We agree with the court's characterization and affirm.

FACTS

Welker's lengthy second amended complaint (SAC) can be distilled into a few short facts.

Welker owns and lives in property located in Rancho Mirage, California. Welker financed the acquisition with an adjustable rate promissory note and deed of trust that names defendant Hyperion Capital Group LLC, as the lender. The deed of trust names MERS as the beneficiary. The promissory note Welker executed was transferred by defendant EMC Mortgage Company to a trust that pooled and securitized the note along with other notes.

Welker apparently defaulted on his loan.[1] In May 2010 defendant NDEx West LLC, prepared and recorded a notice of default with respect to Welker's promissory note and deed of trust. Welker did not know of any recorded document or chain of title indicating anyone other than Hyperion Capital Group as the lender. In July 2010, MERS, as nominee for Hyperion Capital Group, assigned the deed of trust to defendant Wells

---

[1] Welker does not admit this in so many words, but neither does he deny it. What he does say is, "Defendants would also falsely assure Plaintiff that his loan would be modified and induced him to stop making payments so that he could obtain a modification."

2

Fargo Bank N.A., as trustee for defendants "Certificate Holders of Structured Asset Mortgage Investment II, Inc., [and] Bear Stearns Mortgage Funding Trust 2006-AR5" (the securitization trust). That transfer was void, according to Welker, because the relevant pooling and service agreement governing the securitization trust did not permit the trust to acquire properties after December 30, 2006.

In April 2011, "Plaintiff began making his request and notices of erroneous records to Defendant NDEx West LLC, and other Defendants. These requests provided a notice and account or Loan validation request form. This form has never been properly addressed or provided by any of the Defendants." Based on this fact, Welker alleges that the entire foreclosure process was fraudulent.

In May 2011, defendants (it is unclear which one) sold Welker's home through the nonjudicial foreclosure process at a trustee's sale to defendant Wells Fargo Bank, N.A., as trustee for the securitization trust. In June 2011, a rescission of the trustee's deed upon sale was recorded in Riverside County. A second notice of default was recorded in August 2011.

The remainder of Welker's complaint is a diatribe against banks, MERS, and the home mortgage industry in general. The gist is that the industry is rife with fraud and the system is designed to cheat county recorder offices out of fees. Welker's complaint sums it up as follows: "This action seeks to redress the economic and public harm to Plaintiff, and California Counties and similarly situated citizens who have defendant [MERS] listed named [*sic*] in their Deeds of Trust. The harm arises from, but is not limited to, the failure to record required mortgage assignments and instruments that have adversely affect [*sic*] real estate titles in county recording or land title offices along with many other structural and material defects resulting from the MERS encumbrance upon land titles."

Welker asserted causes of action for (1) violation of Business and Professions Code section 17200; (2) "Civil Conspiracy & Conspiracy to Violate Business

3

and Professions Code [and] California False Claims Acts"; (3) cancellation of the notices of default; (4) declaratory relief regarding whether defendants have a security interest; (5) injunctive relief; (6) breach of the implied covenant of good faith and fair dealing with regard to a consent decree some defendants entered into with the Federal Trade Commission in an unrelated case; (7) fraud; (8) "Invalid Assignment"; (9) accounting; (10) "Intentional Misrepresentation"; (11) declaratory relief that "Defendants Notice of Default executed prior to being substituted as the Trustee"; (12) violation of the False Claims Act (Gov. Code, § 12650 et seq.); (13) conversion; and (14) conspiracy to commit conversion.

Defendants JPMorgan Chase Bank, N.A., EMC Mortgage Company, and NDEx West LLC demurred. The court sustained the demurrer without leave to amend, stating, "This is a canned complaint that could apply to virtually any non-judicial foreclosure carried out since the home loan securitization process began. No California court has found that MERS lacks authority to foreclose." Welker timely appealed.

DISCUSSION

Welker raises three issues on appeal. First, the court "misapprehended" Welker's claims when it said, "No California court has found that MERS lacks authority to foreclose"—Welker denies making this claim. Second, the court erroneously took judicial notice of various documents, converting a demurrer into the equivalent of an unauthorized summary judgment motion. Third, the securitization trust did not validly hold Welker's note because the trustee was only authorized to purchase deeds of trust during 2006, and the transfer of Welker's deed of trust occurred after that time, and thus the wrong party attempted to foreclose. We conclude Welker's lawsuit fails because, in the absence of prejudice, which he has not shown, he is not entitled to preemptively

4

challenge a nonjudicial foreclosure on the basis that the foreclosing party has no authority to do so.

"We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.] We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.)

From a steady line of recent cases in this state, the rule has emerged that a homeowner generally may not challenge a nonjudicial foreclosure on the basis that the wrong party is foreclosing without specific facts indicating it is the wrong party, together with prejudice to the homeowner.

The first of this modern line of cases was *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 (*Gomes*). There, as here, the homeowner defaulted on a home loan with a deed of trust that identified MERS as the beneficiary. (*Id.* at p. 1151.) The notice of default was sent, and a nonjudicial foreclosure process initiated, by parties not on the original deed of trust. (*Id.* at pp. 1151-1152.) The homeowner filed suit, alleging he did not know the identity of the note's beneficial owner, and alleged on information and belief that the parties carrying out the foreclosure process were not acting with the rightful owner's authority. (*Id.* at p. 1152.) The trial court sustained a demurrer. (*Id*. at p. 1153.)

The *Gomes* court affirmed. It premised its holding on the nature of California's nonjudicial foreclosure scheme (Civ. Code, §§ 2924-2924k), which provides "'a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] 'These provisions

5

cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.'" (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154.)

Given the exhaustive nature of the system, the court rejected the homeowner's argument that the statutory scheme, by "'necessary implication,'" permits a homeowner to "test whether the person initiating the foreclosure has the authority to do so." (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155.) "Section 2924, subdivision (a)(1) states that a 'trustee, mortgagee, or beneficiary, or any of their authorized agents' may initiate the foreclosure process. However, nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action. [Citation.] Significantly, '[n]onjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, "[n]either appraisal nor judicial determination of fair value is required," and the debtor has no postsale right of redemption.' [Citation.] The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Id.* at p. 1155.)

Despite this apparently inflexible rule, *Gomes*, *supra*, 192 Cal.App.4th at page 1155 distinguished three similar federal district court cases where plaintiffs were permitted to proceed with a cause of action on the basis that, in those cases, the plaintiff

identified a "*specific factual basis* for alleging that the foreclosure was not initiated by the correct party." (*Id.* at p. 1156.)

This language gave rise to a split of authority concerning whether a plaintiff may ever bring a cause of action to challenge a foreclosing party's authority in the context of a nonjudicial foreclosure, and our Supreme Court has recently granted review of a case on the issue. (*Yvanova v. New Century Mortgage Corp.*, review granted Aug. 27, 2014, S218973.) The only case to hold a plaintiff can bring such a claim is *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*).

In *Glaski*, the homeowner's note and deed of trust were transferred to a securitization trust, and, as in our case, plaintiff alleged the transfer was defective because "the attempted transfers were made *after the closing date* of the securitized trust holding the pooled mortgages . . . ." (*Glaski*, *supra*, 218 Cal.App.4th at p. 1082.) "We conclude that a borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under N.Y. law) occurred after the trust's closing date. Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement." (*Id.* at p. 1083.)

With respect to standing, *Glaski* reasoned that while third parties have no standing to challenge an assignment merely *voidable* at the election of the assignor, a homeowner may challenge an assignment that is *void*. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1094-1095.) Interpreting a New York statute that has generated conflicting interpretations among various courts, the *Glaski* court concluded the best interpretation was that the attempted transfer to the securitization trust was void. This conclusion, it reasoned, "protects the beneficiaries of the . . . Securitized Trust from the potential adverse tax consequence of the trust losing its status as a [real estate mortgage investment conduct] trust under the Internal Revenue Code." (*Id.* at p. 1097.)

7

*Glaski* distinguished *Gomes* on two grounds. First, it narrowly interpreted *Gomes* as limited to challenges to the ability of the *nominee*, MERS, to participate in the foreclosure process. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1098-1099.) Second, the court relied on the "specific factual basis" language *Glaski* employed to distinguish the federal cases. (*Id.* at p. 1099.) *Glaski* found the plaintiff's allegations had met that requirement.

Several cases both before and after *Glaski* have reached the opposite conclusion. (E.g., *Mendoza v. JPMorgan Chase Bank, N.A.*, review granted Nov. 12, 2014, C071882; *Keshtgar v. U.S. Bank, N.A.*, review granted Oct. 1, 2014, B246193; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75 (*Siliga*); *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495 (*Herrera*); *Jenkins v. JPMorgan Chase Bank, N.A.* (2012) 216 Cal.App.4th 497 (*Jenkins*); *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 (*Fontenot*).) Federal courts have likewise largely rejected *Glaski* as unpersuasive. (See *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 744 [collecting cases].) In particular, the Second Circuit Court of Appeals has rejected *Glaski's* analysis on the standing issue, holding that under New York law an improper transfer to an investment trust is *voidable*, not void, and thus a third party plaintiff has no standing to challenge such a transfer. (*Rajamin v. Deutsche Bank National Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90.)

In our view, the principal defect in *Glaski* is that court's failure to assess prejudice. A plaintiff alleging a defect in the assignment of a mortgage must demonstrate prejudice. For example, in *Siliga*, where the plaintiffs made essentially the same allegations as those made here, the court affirmed the sustaining of a demurrer on, among other grounds, the plaintiffs' inability to demonstrate prejudice: "the [plaintiffs] fail to allege any facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process. The [plaintiffs] do not dispute that they are in default under the note. The assignment of the deed of trust and the note did

8

not change the [plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances. Absent any prejudice, the [plaintiffs] have no standing to complain about any alleged lack of authority or defective assignment." (*Siliga, supra*, 219 Cal.App.4th. at p. 85.) Likewise, in *Fontenot*, where the plaintiff also challenged a foreclosure based on an invalid assignment of a mortgage, the court affirmed the sustaining of a demurrer on the basis that plaintiff could not demonstrate prejudice: "Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note [citation], nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.)

Not only did *Glaski* fail to analyze these holdings, but it does not even mention the word "prejudice." This omission is fatal to *Glaski's* holding, and thus we decline to follow it. In the absence of prejudice, a cause of action based on technicalities in the chain of title serves no other purpose than to permit the borrower to continue living in the home without paying for it. To the extent the various financial institutions involved object to the manner or validity of the assignments involved, they can sort the matter out themselves, probably without recourse to the courts. We see no benefit in permitting a defaulted borrower to maintain such a suit in the absence of real harm to the borrower.

Welker's suit is of precisely this ilk. Although he split his complaint up into 14 causes of action, they all revolve around the claim that defendants are not authorized by the true holder of the deed of trust to foreclose on his home. He does not dispute that he is in default on the loan, nor does he claim he is willing or able to cure the default. His complaint drones on and on about perceived injustices in the mortgage market, but nowhere does he articulate specific prejudice from the allegedly improper assignments of his deed of trust. Nor has he articulated below or in this court how he could amend his complaint to allege prejudice. Accordingly, the court properly sustained defendants' demurrers without leave to amend.[2]

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs incurred on appeal.

IKOLA, J.

WE CONCUR:

FYBEL, ACTING P. J.

THOMPSON, J.

---

[2] Given this analysis upon our own independent review of the complaint, we do not reach Welker's claim that the trial court misperceived his actual claim or that the trial court improperly took judicial notice.

10