Filed 12/15/15  Tylo v. JPMorgan Chase Bank CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBORAH HUNTER TYLO, | B253969 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC495018) |
| v. | |
| JPMORGAN CHASE BANK, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Rodriguez Law Group, Patricia Rodriguez; Law Offices of Herb Fox and Herb Fox for Plaintiff and Appellant.

Keesal, Young & Logan and David D. Piper for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff Deborah Hunter Tylo sued her mortgage loan servicer, JPMorgan Chase Bank, N.A. (Chase), and the trustee of the securitized trust holding her loan, Bank of America, N.A. (Bank of America; collectively, Defendants), to prevent Defendants from foreclosing on her property. Plaintiff principally contends that Defendants lack standing to foreclose because they failed to comply with certain requirements of the securitized trust's pooling and servicing agreement when they securitized her loan. Plaintiff also claims that Defendants violated the federal Truth in Lending Act (TILA) by failing to give her timely notice that her loan had been transferred to the securitized trust. Because California's nonjudicial foreclosure statutes provide no legal basis for a judicial action to preempt a foreclosure on the grounds asserted by Plaintiff, and because the subject TILA notification provision was not in effect when Plaintiff's original lender transferred her loan to the securitized trust, we conclude the trial court properly sustained Defendants' demurrer without leave to amend. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Because this matter comes to us on demurrer, our statement of facts is based upon the allegations of Plaintiff's operative first amended complaint. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.) "[W]e treat as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 178, fn. 3.)

On June 16, 2006, Plaintiff obtained a residential home loan from Washington Mutual in the principal amount of $1,188,750. In connection with the loan, Washington Mutual obtained a security interest in the subject property under a deed of trust. Sometime thereafter, Washington Mutual transferred Plaintiff's mortgage loan to a securitized trust, designated as "WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR11" (the Securitized Trust). The trustee of the Securitized Trust received the loan pursuant to the terms of the trust's Pooling and Servicing Agreement (PSA). Washington Mutual retained the right to service Plaintiff's

loan under the PSA. Bank of America became trustee for the Securitized Trust after acquiring the original trustee, LaSalle Bank.

In 2008, Chase purchased Washington Mutual out of receivership, acquiring, among other things, Washington Mutual's servicing rights, but not a beneficial interest in Plaintiff's mortgage loan.

On June 13, 2012, National Default Servicing Corporation (NDSC), acting as the authorized agent for Chase, recorded a notice of default against the subject property.[1] On October 9, 2012, NDSC recorded a notice of trustee sale. The operative first amended complaint, filed on August 9, 2013, alleges the property "is scheduled to be sold at a Trustee's Sale on November 2, 2012." The complaint does not allege whether the trustee sale occurred, or if the sale was postponed or re-noticed. However, in her reply brief filed in this appeal, Plaintiff confirms that she does "not allege[] that a foreclosure sale has occurred."

Plaintiff's first amended complaint asserts causes of action for wrongful foreclosure and violation of TILA. With respect to the wrongful foreclosure claim, the complaint alleges Chase lacks standing to foreclose on the property because it "did not properly comply with the terms of Defendants' own securitization requirements" or the PSA. Under the PSA, the complaint alleges, "the only person [*sic*] who can lawfully commence foreclosure on [the] property are those certificate holders of the securitized trust." The complaint adds that "in order for [Chase] to have had a valid and enforceable security interest against the Property, [Chase] must prove that [it] received an endorsement of the Note" from the Securitized Trust. "Absent such proof," the complaint states, "CHASE does not have standing to initiate foreclos[ure]."

---

[1]   The first amended complaint alleges NDSC is "in the business of conducting non-judicial foreclosures in California and acted as a foreclosure trustee herein." Although the complaint named NDSC as a defendant, there are no other pleadings related to the entity in the record, nor has Plaintiff supplied a legal argument challenging NDSC's dismissal in her appellate briefs.

As for the TILA violation, the complaint alleges Bank of America violated the statute (15 U.S.C. § 1641(g)) by failing to provide Plaintiff with timely written notice after her mortgage loan was transferred to the Securitized Trust.

Defendants Chase and Bank of America filed a joint demurrer to the first amended complaint. Among other things, Defendants argued Plaintiff could not maintain a claim for wrongful foreclosure because no foreclosure had taken place and a preforeclosure judicial action challenging the foreclosing party's standing is not authorized under California's nonjudicial foreclosure statutes. As for the TILA claim, Defendants argued Bank of America could not be held liable because Plaintiff's loan was transferred to the Securitized Trust sometime in 2006, while the subject notice provision (15 U.S.C. § 1641(g)) did not become effective until May 20, 2009.

The trial court sustained Defendants' demurrer without leave to amend.

### DISCUSSION

1.  *Plaintiff's Preforeclosure Lawsuit Challenging Defendants' Standing to Foreclose Is Not Authorized by California's Nonjudicial Foreclosure Statutes*

On review of a judgment of dismissal after an order sustaining a demurrer, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

Although she styles her claim as a "wrongful foreclosure" action, Plaintiff admits that no foreclosure sale has occurred. Nevertheless, Plaintiff maintains "it is clear . . . that foreclosure has begun, and any attempted sale of the property is wrongful based on the facts and allegations" pled in the complaint. The complaint itself states the wrongful foreclosure cause of action is asserted "to prevent a sale," rather than "unwind" one. Accordingly, notwithstanding the label placed on the cause of action, we must determine whether the alleged facts are sufficient to preempt a foreclosure sale on any cognizable legal theory. (See *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1595 ["we look beyond the claim's label, which is not dispositive when reviewing a trial

4

court's sustaining of a general demurrer" and focus instead on the claim's " 'actual gravamen' " and the " '*facts alleged.*' "].)

Notwithstanding her admitted execution of the deed of trust, the gravamen of Plaintiff's claim is that Defendants lack standing to foreclose on the subject property because they failed to comply with certain requirements set forth in the PSA when they securitized her loan. In her appellate briefs, Plaintiff adds that unless Defendants can establish "a complete and unbroken chain of transfers and assignments" and prove that the trustee of the Securitized Trust had "actual physical possession" of the promissory note before the trust's closing date, Defendants cannot demonstrate that the trust "perfected its security interest" in the subject property. Under these circumstances, Plaintiff maintains Defendants should be "precluded from asserting any secured or unsecured claim" with respect to the property. Consistent with recent authorities rejecting similar claims, we conclude these allegations are insufficient to state a preemptive cause of action to stop or delay a nonjudicial foreclosure sale.

"The argument that a defendant lacks standing to foreclose because of an improper securitization process has recently become particularly popular." (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 741 (*Kan*).) In *Kan*, the plaintiff sought to amend his complaint to state a preforeclosure quiet title claim based on the allegation that his lender's nominee transferred his deed of trust to a securitized investment trust "after the trust closed." (*Id.* at p. 741.) Based on this allegation, the plaintiff argued he could assert a viable claim to quiet title because the "attempted transfer to the investment trust was therefore void," and the successor beneficiary and trustee thus had "no right, title, or interest in the property" upon which to foreclose. (*Ibid.*) The Court of Appeal rejected the proposed amendment, concluding "California's nonjudicial foreclosure statutes provide[d] [the plaintiff] with no basis to [preemptively] challenge the authority of the entity initiating the foreclosure process." (*Id.* at p. 745.)

In reaching this conclusion, the *Kan* court relied principally upon *Jenkins v. JPMorgan Chase Bank, N.A*. (2013) 216 Cal.App.4th 497 (*Jenkins*).  Much like the plaintiff in *Kan* and Plaintiff in the instant case, the plaintiff in *Jenkins* asserted that the defendants—the successor beneficiary under the plaintiff's deed of trust, the successor trustee, and the acting trustee of the securitized investment trust—lacked authority to initiate a nonjudicial foreclosure because they failed to comply with certain terms of the investment trust's pooling and servicing agreement when they securitized the plaintiff's loan.[2]  (*Id.* at p. 510.)  The *Jenkins* court rejected the plaintiff's claim, observing that it relied on the false premise that a trustor-debtor has a "right to bring a preemptive judicial action to determine whether [the beneficiary, trustee or any other authorized agent under a deed of trust] ha[s] the authority to initiate nonjudicial foreclosure on her home."  (*Id.* at pp. 512-513.)  In explaining why no such right exists, the *Jenkins* court emphasized that California's nonjudicial foreclosure statutes (Civ. Code, §§ 2924-2924k) provide a " ' comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust' " (*Jenkins,* at p. 508), and nothing within that framework imposes " 'the additional requirement' that the foreclosing entity must 'demonstrate *in court* that it is authorized to initiate a foreclosure' before the foreclosure can proceed" (*id.* at p. 512, quoting *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154, fn. 5 (*Gomes*)).  The court held that to imply such a requirement by permitting the plaintiff to pursue her judicial action would "result in the impermissible interjection of the courts into a *nonjudicial* scheme enacted by the California Legislature" and " 'introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.' " (*Jenkins,* at p. 513, italics added.)

---

[2]     The specific alleged violations in *Jenkins* largely mirrored those asserted by Plaintiff in the instant case.  Like Plaintiff here, the plaintiff in *Jenkins* alleged "the terms of the pooling and servicing agreement were violated because (1) the promissory note was not transferred into the investment trust with a complete and unbroken chain of endorsements and transfers and (2) the trustee of the investment trust did not have actual physical possession of the note and deed of trust prior to the closing date of the investment trust." (*Jenkins, supra,* 216 Cal.App.4th at p. 510.)

6

Importantly for our analysis, the *Jenkins* court distinguished a claim alleging " 'misconduct arising out of a nonjudicial foreclosure *sale*,' " which can give rise to a valid *post*foreclosure judicial action, from the preemptive preforeclosure action the plaintiff sought to assert. (*Jenkins, supra,* 216 Cal.App.4th at p. 510, italics added.) The plaintiff's preemptive action, the *Jenkins* court explained, "does not seek a remedy for a foreclosing party's misconduct with regards to the initiation and processing of the nonjudicial foreclosure"; rather, it sought to stop or delay the foreclosure by incorporating an adjudicatory requirement into the nonjudicial framework. (*Id.* at p. 512.) That result, the court noted, "would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' . . . and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]' " (*Ibid*., quoting *Gomes, supra,* 192 Cal.App.4th at p. 1154 & fn. 5.) For these reasons, the *Jenkins* court observed, "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Id*. at p. 511.)

Though Plaintiff does not address *Jenkins* in her briefs, she implicitly argues we should reject its reasoning and follow *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*). The plaintiff in *Glaski* brought an action for wrongful foreclosure after his home was purchased by the purported successor trustee at a nonjudicial foreclosure sale. In relevant part, the plaintiff alleged that the foreclosing entity—the trustee acting on behalf of a securitized trust formed under New York law—was not the true owner of his loan because its chain of title had been broken by a defective transfer of the loan to the securitized trust after the trust's closing date, in violation of the trust's pooling and servicing agreement. (*Id.* at p. 1084.) The *Glaski* court held these allegations were sufficient to state a wrongful foreclosure claim on the theory that the entity invoking the power of sale did not hold the plaintiff's loan. The court reasoned that New York trust law supplied a legal basis for the plaintiff's theory of recovery because, under that body of law, the securitized trust's alleged attempt to accept the transfer of the loan after the

7

closing date established by its pooling and servicing agreement "would be void as an act in contravention of the trust document." (*Id.* at pp. 1096-1097.)

We disagree with Plaintiff's assertion that *Glaski* establishes a cognizable theory for relief based on the facts alleged in her complaint. Critically, the plaintiff in *Glaski* sought relief for wrongful foreclosure based on alleged misconduct that culminated in a foreclosure *sale*. Here, although Plaintiff attaches the "wrongful foreclosure" label to her claim, she admits that no foreclosure sale has occurred. As explained in *Jenkins* (a case not discussed in *Glaski*), allowing Plaintiff to assert a preemptive action "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature." (*Jenkins, supra,* 216 Cal.App.4th at p. 513.) Further, it " 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy.' " (*Id.* at p. 512, quoting *Gomes, supra,* 192 Cal.App.4th at p. 1154, fn. 5; *Kan, supra,* 230 Cal.App.4th at p. 743.) And notably, as the court observed in *Kan*, "*Glaski* did not take issue with *Gomes*'s holding that a preforeclosure, preemptive action is not authorized by the nonjudicial foreclosure statutes because it creates an additional requirement that a foreclosing entity first demonstrate in court that it is entitled to foreclose." (*Kan,* at p. 743.) In view of the admitted fact that no foreclosure sale has occurred, *Glaski* is inapposite.[3]

---

[3]     As *Kan* also notes, several courts have criticized *Glaski*'s separate holding that the plaintiff had standing to challenge alleged violations of a pooling and servicing agreement to which he was neither a party nor third party beneficiary. (*Kan, supra,* 230 Cal.App.4th at p. 744 [listing cases].) One California appellate decision, since depublished by our Supreme Court's grant of review, addressed *Glaski* in the context of a preforeclosure lawsuit and explicitly disagreed with that holding. (See *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, review granted Oct. 1, 2014, S220012 (*Keshtgar*).) As the *Kan* court explained, although *Keshtgar* distinguished *Glaski* on the ground that it was a postforeclosure action, the *Keshtgar* court "went further . . . and rejected *Glaski*'s holding that a borrower has standing to challenge an assignment, finding that an assignment of a deed of trust and promissory note do not change the borrower's obligations and therefore do not create prejudice." (*Kan*, at p. 745.) Like the *Kan* court, we are content not to "wade into the issue of whether *Glaski* was correctly decided, because the opinion has no direct applicability to this preforeclosure action." (*Kan*, at p. 745.)

We conclude the holdings in *Jenkins* and *Kan* rejecting a preforeclosure lawsuit to stop or delay a nonjudicial foreclosure are directly on point and the reasoning of those cases, and the cases they relied upon, is sound. Because California's nonjudicial foreclosure statutes afford Plaintiff no basis to judicially challenge the authority of an entity initiating the foreclosure process, the trial court properly sustained Defendants' demurrer to the purported wrongful foreclosure cause of action.

2. *The Transfer Occurred Before the TILA Notification Requirements Became Effective*

The complaint alleges that Bank of America violated the federal TILA— specifically, title 15 of the United States Code section 1641(g)—by failing to "provide Plaintiff with written notice within 30 days after the date on which [Bank of America, as trustee of the Securitized Trust] was allegedly assigned the mortgage." Defendants contend the trial court properly sustained their demurrer to the TILA claim without leave to amend because the complaint admits that Washington Mutual transferred Plaintiff's mortgage loan to the Securitized Trust before section 1641(g) went into effect. We agree.

Section 1641(g) of title 15 of the United States Code provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." [4] Subsection (g) became effective on

---

[4]     Defendants also contend that Bank of America cannot be held liable under title 15 of the United States Code section 1641(g) because the notification provision applies to a "creditor" only, and the complaint's allegations admit that Bank of America is not a creditor but rather the trustee of the Securitized Trust. While two federal district court cases, authored by the same district court judge, have concluded, without analysis, that "a trustee is not a creditor as defined by TILA" (*Morgan v. US Bank Nat'l Ass'n* (N.D.Cal. Dec. 7, 2012) 2012 U.S. Dist. LEXIS 174010, *16; *Wilson v. Wells Fargo Bank* (N.D.Cal. Aug. 5, 2011) 2011 U.S. Dist. LEXIS 86611, *5), several more district courts have rejected this holding. (See, e.g., *Vargas v. JP Morgan Chase Bank, N.A.* (C.D.Cal. 2014) 30 F.Supp.3d 945, 950; *Rodriguez v. Wells Fargo Bank, N.A.* (C.D.Cal. May 6, 2013) 2013 U.S. Dist. LEXIS 186257, *5-*6; *Dinh v. Citibank, N.A.* (C.D.Cal. Jan. 7, 2013) 2013 U.S. Dist. LEXIS 2312, *18; *Vogan v. Wells Fargo Bank, N.A.* (E.D.Cal. Nov. 17, 2011) 2011 U.S. Dist. LEXIS 132944, *10-*12.) As the court in *Vogan*

9

May 20, 2009.  (Pub. L. No. 111-22 (May 20, 2009) 123 Stat. 1632.)  The provision does not apply retroactively.  (*Diunugala v. JP Morgan Chase Bank, N.A*. (S.D.Cal. June 30, 2015) 2015 U.S. Dist. LEXIS 85128, *10; *Bradford v. HSBC Mort. Corp.* (E.D.Va. 2011) 829 F.Supp.2d 340, 353 [observing, "[n]othing in TILA indicates that [section 1641(g)] should be applied retroactively, and retroactive application of the provision . . . would undoubtedly and impermissibly 'attach[ ] new legal consequences to events completed before its enactment,' " quoting *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 269-270].)  Accordingly, a creditor is not liable under TILA for an alleged failure to notify a borrower of a loan transfer that occurred prior to May 20, 2009.  (See *Jara v. Aurora Loan Services* (N.D.Cal. 2012) 852 F.Supp.2d 1204, 1208-1209; *Bernardi v. Deutsche Bank Nat'l Trust Co. Am.* (N.D. Cal. Jan. 15, 2013) 2013 U.S. Dist. LEXIS 6735, *18-*19 (*Bernardi*).)

Plaintiff maintains she learned of the alleged TILA violation when she "obtained an audit on the property and discovered that the Loan had been assigned."  While this "audit" presumably disclosed the date of the assignment, Plaintiff's complaint fails to allege when the assignment occurred.  Notwithstanding this omission, Defendants argue we can infer that the assignment necessarily occurred at some time in 2006 when the Securitized Trust, designated as "WAMU MORTGAGE PASS-THROUGH

---

explained, "the *Wilson* court failed to note the distinction between a trustee of a deed of trust and the trustee of a mortgage backed security, as well as the basis for the rule exempting the trustee of a deed of trust from TILA."  (*Vogan,* at p. *11.)  "Under California law, the trustee of a deed of trust has no beneficial interest in the mortgage associated with the deed of trust," and "has only two duties: (1) to foreclose the deed of trust upon default, or (2) when the secured debt is satisfied to convey the deed of trust to the borrower."  (*Id.* at pp. *9-*10.)  It is "[d]ue to the limited duties and lack of beneficial interest assigned to the trustee of a deed of trust [that] federal courts in California hold that TILA does not apply to the trustee of a deed of trust."  (*Id.* at p. *10.)  In holding that the trustee of a mortgaged backed security could be liable under section 1641(g), *Vogan* and the numerous cases that have followed it concluded, "The trustee of a deed of trust is exempt from TILA because of its limited role under California law, but there is no analogous reason to exempt other types of trustees from TILA's provisions."  (*Id.* at p. *11.)

10

CERTIFICATES SERIES *2006*-AR11," closed. (Italics added.) While we recognize there is some appeal to this logic (see, e.g., *Bernardi, supra,* 2013 U.S. Dist. LEXIS 6735 at p. *18-*19), we need not make this leap to conclude that the transfer occurred before section 1641(g)'s effective date.

Bank of America's alleged TILA violation occurred when it was assigned Plaintiff's loan *as the trustee of the Securitized Trust*—that is, upon the loan's securitization. Although the complaint does not specify when the securitization occurred, a reasonable construction of the complaint's allegations confirms that the securitization occurred, at the latest, sometime in or before 2008; in other words, before section 1641(g)'s effective date in May 2009.

Plaintiff alleges that, upon securitization, Washington Mutual retained only servicing rights with respect to her loan, while Bank of America's predecessor, LaSalle Bank, received the beneficial interest as trustee on behalf of the Securitized Trust. The complaint further alleges that, *in 2008*, Chase acquired Washington Mutual's servicing rights when it purchased Washington Mutual out of receivership. The complaint emphasizes that Chase did not acquire the beneficial interest in Plaintiff's loan, which had been previously assigned to the Securitized Trust.[5] Thus, notwithstanding Plaintiff's failure to specify when the securitization occurred, it is clear that she cannot amend her complaint to allege her loan was securitized and transferred to Bank of America as trustee of the Securitized Trust at any time after 2008. And, because the securitization and transfer to Bank of America necessarily occurred before section 1641(g)'s effective date in May 2009, the trial court properly sustained Defendants' demurrer to the claim without leave to amend.

---

[5] Notably, it is the alleged fact that Chase did not acquire a beneficial interest in Plaintiff's loan—that interest being held by the "certificate holders of the securitized trust"—which Plaintiff asserts as the basis for her wrongful foreclosure claim.

11

**DISPOSITION**

The judgment is affirmed.  Defendants JPMorgan Chase Bank, N.A. and Bank of America, N.A. are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

JONES, J.[*]

We concur:

EDMON, P. J.

LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12