Filed 2/5/15  Reynolds v. 2013-3 SFR Venture CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JEANINE NEWMAN-REYNOLDS et al., | D064930 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00053672-CU-BT-NC) |
| 2010-3 SFR VENTURE, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Wallenius Law Group and Rena Wallenius for Plaintiffs and Appellants.

Hinshaw & Culberton and Gary E. Devlin for Defendants and Respondents.

Plaintiffs Jeanine Newman Reynolds and Mary Petty, as individuals and trustees of the Mary J. Webb Revocable Living Trust and JMN Revocable Living Trust, respectively (collectively plaintiffs), sued defendants 2010-3 SFR Venture, LLC (SFR), Mortgage Electronic Registration Systems, Inc. (MERS), and other entities for "predatory lending" and related causes of action arising from nonjudicial foreclosure proceedings that SFR

initiated against residential real property owned by plaintiff Petty. Plaintiffs appeal from separate judgments of dismissal entered in favor of MERS and SFR after the trial court sustained MERS's and SFR's demurrers to plaintiffs' third amended complaint without leave to amend.[1] Plaintiffs contend that the court erred in sustaining the demurrers because plaintiffs pled facts sufficient to support each element of their causes of action against MERS and SFR. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed the present action in May 2012. According to their operative third amended complaint filed in April 2013, plaintiff Petty purchased the subject residential real property in Oceanside in 1999 with assistance from plaintiff Newman-Reynolds. Between 1999 and 2006, Petty obtained several refinance loans for the purpose of improving the property. In 2006, defendant Ace Mortgage Funding (Ace) advised Petty that she could obtain a refinance loan through MI.

Petty obtained the subject refinance loan in the amount of $843,859.30 without having to provide any documentation regarding her income. At the time the loan documents were executed, plaintiffs believed that MI was the actual lender and that Petty was not asked to provide income documentation because there was sufficient equity in the property for the refinance. Plaintiffs allege that they later learned that MI was

---

[1]	In their opening brief, plaintiffs also challenge a separate judgment of dismissal that the court entered in favor of defendant MortgageIt, Inc. (MI). However, as we explain below, we lack jurisdiction to review the judgment in favor of MI because plaintiffs did not identify that judgment in their notice of appeal and their appeal is untimely as to that judgment.

2

actually only a broker, like Ace, in a larger securitization transaction, and that MI entered into the loan transaction with Petty on a stated income basis because it was not a traditional lender advancing its own funds and, therefore, was not concerned about repayment.

Ace assured Petty that the subject "loan terms and conditions were industry standard, and that this was a 'good loan.' "  In September 2006, Petty entered into the loan transaction believing that she had entered into a conventional refinance loan with MI.  She signed an "Adjustable Rate Note" (the note) in the amount of $843,750 and a deed of trust.  Plaintiffs allege that the note "contains a literal labyrinth of terms, conditions and events regarding the payments to be made in accordance with it," and that the final settlement statement for the loan shows a "yield spread premium" (YSP) payment to Ace in the amount of $29,109.37 that was not disclosed in the initial estimated settlement.  Plaintiffs allege that "[t]his astronomical YSP was only possible due to the entire transaction being the front end of a securitization transaction, and this YSP would not be present if MI really was the 'Lender' providing its own funds and assets for the loan."[2]

The initial interest rate on the note was 1.25 percent and the initial monthly payment was $2,234.63.  The note provides that the monthly payment could change annually and that the interest rate could change on the first of every month.  The note states that because the monthly payment amount would change less frequently than the interest rate, the minimum monthly payment could be less than the interest portion of the payment "that

---

[2] The third amended complaint cites to its attached "Exhibit 7" as being the Final Closing Statement that shows the $29,109.37.  Exhibit 7 states that the YSP is payable to Ace by the lender.  The YSP is not included on the list of items under the heading "PAID FROM BORROWER'S FUNDS AT SETTLEMENT."

would be sufficient to repay the unpaid Principal [owing] at the monthly payment date in full on the Maturity Date in substantially equal payments." The note provided that for each month that the monthly payment was less than the interest portion, "the Note Holder will subtract the amount of [the] monthly payment from the amount of the interest portion and will add the difference to [the] unpaid Principal, and interest will accrue on the amount of this difference . . . ." Plaintiffs allege that "[t]he terms and conditions of the Loan Transaction . . . resulted in the following situation: the $843,859.30 borrowed amount has become $1,108,899.52, while the home value, $1,125,000.00 at the time of the loan, has dropped to $492,000 at the time of filing this complaint."

The deed of trust that secures the subject note provides that MERS "is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." On August 19, 2009, an authorized signatory for MERS, acting "as nominee for [MI]," executed an "Assignment of Deed of Trust" that assigned the beneficial interest in the deed of trust to Federal Deposit Insurance Corporation (FDIC) as receiver for IndyMac Federal Bank, FSB. On December 28, 2010, FDIC executed an "Assignment of Real Estate Deed of Trust" that assigned "all right, title and interest" in the deed of trust to SFR.

RoundPoint Mortgage Servicing Corporation (RoundPoint), the company that was servicing Petty's loan, sent Petty a letter in May 2011 informing her that her loan had reached negative amortization status, which meant that the loan's unpaid principal balance had increased over the amount allowed on the loan. The letter stated: "While your loan documents allow for this, when your unpaid principal balance exceeds the Maximum Limit

4

equal to 115% of the principal amount you originally borrowed, your Minimum Payment option will no longer be offered. You are currently at 111% of your Maximum Limit. To avoid any further increases in your unpaid principal balance, we suggest that you choose one of the other payment options listed on your monthly billing statement."

In April 2012, Quality Loan Service Corporation (Quality), on behalf of SFR, recorded a "Notice of Default and Election to Sell Under Deed of Trust" (notice of default). The notice of default stated that the payment amount required to "bring [the] account in good standing" was $53,639.70 as of April 16, 2012, and would continue to increase until the account became current. Plaintiffs state on appeal that no foreclosure sale of the subject property has occurred. SFR claims that Petty has not made a payment on the loan in over five years and that plaintiffs continue to reside in the subject property.

Plaintiffs filed their original complaint in May 2012. Their operative third amended complaint named as defendants MI, Ace, MERS, FDIC, SFR, OneWest Bank, and Quality. The third amended complaint included a first cause of action entitled "Violation of the California Predatory Lending Act" (Fin. Code, § 4970 et seq.) against MI, Ace, OneWest, FDIC, and SFR; a second cause of action for fraud containing three separate "counts," including one against MERS and one against SFR; a third cause of action for breach of the implied covenant of good faith and fair dealing against MI and Ace; a fourth cause of action entitled "Unlawful Business Practices and Acts" against all defendants; a fifth cause of action entitled "Attempted Wrongful Foreclosure" against FDIC, SFR, and Quality; and a sixth cause of action, which is designated as "E. Entitlement to Declaratory Relief" in the body of the complaint, but referred to as the "sixth cause of action" in the prayer for relief.

5

The prayer for the sixth cause of action seeks a declaration that MI sold its interests in the subject note and deed of trust prior to the MERS assignment; a declaration that "SFR, its agents, assigns and successors . . . have no estate, right, title or interest in the Subject Property"; and "a judgment forever enjoining . . . SFR, its agents, assigns and successors, from claiming any estate, right, title or interest in the subject property."

MI, MERS, and SFR each filed a demurrer to the third amended complaint. The court sustained MI's demurrer without leave to amend and entered judgment in MI's favor on June 11, 2013. MI served notice of entry of judgment on plaintiffs on June 20, 2013. The court sustained MERS's demurrer without leave to amend and entered judgment in favor of MERS on September 5, 2013. MERS served notice of entry of judgment on plaintiffs on September 23, 2013 and filed its notice of entry on September 25, 2013.[3] The court sustained SFR's demurrer without leave to amend and entered judgment in favor of SFR on September 12, 2013. SFR served notice of entry of judgment on September 25, 2013.

---

[3]     MERS's notice of entry of judgment incorrectly states that the court entered judgment "on September 20, 2013." Although the conformed copy of the judgment attached to MERS's notice of entry is file-stamped September 5, 2013, the incorrect date of September 20, 2013 is handwritten next to the judge's file-stamped signature at the end of the judgment. The clerk's transcript contains a copy of the judgment in favor of MERS that bears the court's handwritten signature and handwritten date of September 5, 2013. It is unclear why the copy of the judgment attached to MERS's notice of entry of judgment is dated September 20 despite being file-stamped September 5. The incorrect handwritten date on that copy of the judgment does not match the court's handwriting on the correctly dated judgment and, as noted, the incorrectly dated copy of the judgment bears the court's *file-stamped* signature rather than the court's handwritten signature.

Plaintiffs filed a notice of appeal on November 5, 2013. The notice of appeal initially identified two judgments by their entry dates as follows: "9/20/2013; 9/12/2013." However, the date "9/20/2013" is crossed out and the date "9/25/13" is handwritten in its place. This court received a declaration from plaintiff Newman-Reynolds in which she stated that when she filed the notice of appeal, a court clerk informed her that she "had the date wrong on the Notice of Appeal document in regards to 'MERS[,]' " and directed her to correct the notice of appeal by changing the date of MERS's judgment to "9/25/13." Newman-Reynolds averred that she changed the date to September 25 pursuant to the clerk's request.

DISCUSSION

I. *Respondents to the Appeal*

Respondents' counsel represents both MERS and SFR and has briefed the issues raised in plaintiffs' opening brief as to both defendants. However, counsel contends that we have jurisdiction to review only the judgment entered in favor of SFR. We conclude that MERS is also a respondent to this appeal. Plaintiffs' notice of appeal identifies the judgment in favor of SFR by its entry date. Although the notice of appeal does not identify the judgment in favor of MERS by its entry date of September 5, 2013, we construe the crossed-out reference on the notice of appeal to a judgment entered on "9/20/2013" to be a reference to the judgment in favor of MERS.

Notices of appeal are to be liberally construed in favor of their sufficiency, and errors are overlooked so long as it is reasonably clear what appellant was trying to appeal from, and the respondent could not possibly have been misled or prejudiced by the error.

7

(*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20; Cal. Rules of Court, rule 8.100(a)(2).)[4]  Because the notice of entry of judgment that MERS served on plaintiffs erroneously states that the judgment in MERS's favor was entered on September 20, 2013, and the copy of the judgment attached to the notice of entry is misdated September 20, 2013 next to the court's file-stamped signature, the notice of entry could have caused plaintiffs, in preparing their notice of appeal, to reasonably err in identifying the judgment in favor of MERS as having been entered on September 20, 2013.  The fact that someone crossed out "9/20/2013" and handwrote the date "9/25/13" in its place on the notice of appeal presumably reflects that the person who wrote "9/25/13," or directed it to be written, confused the file-stamped date on MERS's judgment (September 5, 1013) with the file-stamped date on MERS's notice of entry of judgment (September 25, 2013).  Because we must liberally construe plaintiffs' notice of appeal in favor of its sufficiency, we will construe the notice of appeal as perfecting an appeal from the judgment in MERS's favor as well as the judgment in SFR's favor.

Plaintiffs also purport to appeal from the judgment entered in MI's favor.  As noted, the court entered judgment in MI's favor on June 11, 2013, and MI served notice of entry of judgment on plaintiffs on June 20, 2013.  We lack jurisdiction to review that judgment for two reasons.  First, the notice of appeal does not identify the judgment entered in MI's favor.  To be sufficient, a notice of appeal must identify the "particular judgment or order being appealed."  (Rule 8.100(a)(2).)  In the absence of a sufficient notice of appeal, there

---

4       All rule references are to the California Rules of Court.

is no appellate jurisdiction as to any judgment or order. (*Beets v. Chart* (1889) 79 Cal. 185, 186; *People v. Delaney* (1955) 132 Cal.App.2d 838, 839.) "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed." (*Shiver, McGrane & Martin v. Littell* (1990) 217 Cal.App.3d 1041, 1045.)

Second, the notice of appeal is untimely as to the judgment in MI's favor. Under rule 8.104(a)(1)(B), a notice of appeal must be filed within "60 days after the party filing the notice of appeal . . . is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy or the judgment, accompanied by a proof of service." MI served plaintiffs with a document entitled "Notice of Entry of Judgment," accompanied by a file-stamped copy of the judgment and a proof of service, on June 20, 2013. Consequently, the last day plaintiffs could file a timely notice of appeal from MI's judgment was August 19, 2013. Plaintiffs filed their notice of appeal on November 5, 2013. If a notice of appeal is filed late, the appellate court is without jurisdiction to proceed. (Rule 8.104(b); *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56.) Accordingly, we lack jurisdiction to review the judgment entered in favor of MI.

## II. *Standard of Review*

"A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) First, we review the complaint de novo to determine whether it

9

contains sufficient facts to state a cause of action. (*Ibid.*) We accept as true all the material allegations of the complaint, reasonable inferences that can be drawn from those allegations, and facts that may properly be judicially noticed. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 422.) However, we do not accept as true "contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

Second, when the demurrer is sustained without leave to amend, we ordinarily determine whether the trial court abused its discretion in denying leave to amend. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).) The plaintiff has the burden of showing that an amendment would cure the defect and may make that showing for the first time on appeal. (*Id*. at pp. 1153-1154.) In the present case, plaintiffs have not argued that the court abused its discretion in denying them leave to amend, and they have not attempted to show that amending their third amended complaint would cure any pleading defect. As to each cause of action, plaintiffs argue only that the court erred in sustaining MERS's and SFR's demurrers. Consequently, we will not address whether the court abused its discretion in not granting leave to amend. (*Tan* v. *California Fed. Sav. & Loan Assn*. (1983) 140 Cal.App.3d 800, 811 [Issues not raised in an appellant's brief are deemed waived or abandoned.].)

### III. *First Cause of Action for Predatory Lending*

Plaintiffs named SFR as a defendant in their first cause of action entitled "Violation of the California Predatory Lending Act" (Fin. Code, § 4970 et seq.). Plaintiffs argue that SFR is liable for predatory lending as an assignee of the original predatory lender. We

need not address this argument because we conclude that the trial court properly sustained SFR's demurrer to the first cause of action on the ground that plaintiffs conceded in their opposition to SFR's demurrer that the first cause of action was barred by the doctrine of res judicata.

Plaintiffs stated the following in their opposition to SFR's demurrer: "In its [o]rder sustaining the [d]emurrer of Defendant MI, this Court found the subject loan is not a 'covered' loan, and thus concluded no cause of action for [p]redatory [l]ending is available to Plaintiffs.[5] As Plaintiff Petty's claims against SFR for predatory lending necessarily rely upon such being attributable to MI at origination, SFR's demurrer based upon res judicata is properly taken." Plaintiffs made that concession because the trial court had sustained MI's demurrer to the first cause of action in the third amended complaint on the ground that "plaintiffs have failed to allege facts establishing that the subject loan is a 'covered loan' under California's Predatory Lending Law." The court further ruled, on MI's demurrer, that "the allegations of the complaint, together with matters as to which the Court takes judicial notice, appear to establish that the subject loan is not a 'covered loan.' "

---

5    To be the subject of a cause of action under California's predatory lending statutes, a consumer loan must be a "covered loan" under Financial Code section 4970, subdivision (b), which provides:  " 'Covered loan' means a consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust, and where one of the following conditions are met: [¶] (1) For a mortgage or deed of trust, the annual percentage rate at consummation of the transaction will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor. [¶] (2) The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount."

11

After conceding in their opposition to SFR's demurrer that their first cause of action was barred by res judicata, plaintiffs stated that they "maintain[ed] the viability of this claim against MI and any subsequent alleged holder of the NOTE and [deed of trust], to include Defendant SFR. As such, Plaintiffs intend on appealing the order sustaining MI's demurrer, and will consolidate the res judicata ruling here with the substantive appeal of the ruling favoring MI."

As discussed above, plaintiffs failed to perfect an appeal of the judgment in favor of MI. In their opening brief, they essentially argue that the subject loan is a "covered loan" under Financial Code section 4970 by asserting that "Petty specifically alleged the facts *proving* the Annual Percentage Rate ('APR') exceeded the Treasury securities rate by more than eight percentage points and that the total points and fees paid by the consumer at or before closing exceeded six percent of the total loan amount." The allegations in the third amended complaint that plaintiffs cite in support of this assertion read: "Calculating the principal balance, with the interest rate, interest rate changes, margin, within the 115% limit, using the initial interest rate of 1.5% for two months, then 3.7 above the 4.92 on November 1, 2006, averaged with the interest on payments demanded and calculated in full every fifth payment change date, averaged with the inflated interest rates required to pay the loan in full at maturity once the loan reached the negative amortization status it is currently in, to pay the loan in full within the actual 30 year time limit on the NOTE requires the annual percentage rate at consummation of the transaction of 14.234%" Plaintiffs did not allege what the Treasury securities rate was at the time of the consummation of the transaction.

In its demurrer to the third amended complaint, MI argued that plaintiffs failed to sufficiently plead that the subject loan is a covered loan despite their "numerous interest rate calculations . . . ." Specifically, MI pointed out that plaintiffs failed to "actually allege that the 'loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust' as required [to] establish a claim for predatory lending because it *does exceed the loan limit.* The loan limit for a single-family first mortgage loan in San Diego County, the county of the subject property, is $546,250. . . . Plaintiffs acknowledge the loan was for a principal amount of $843,750.00. On this basis alone, the claim fails." MI further pointed out that plaintiffs failed to "allege any facts in support of the allegation that the annual percentage rate *at consummation of the loan* exceeded the Treasury securities rate by more than eight percentage points, or that the points and fees paid by plaintiff Petty at or before closing exceeded six percent of the total loan amount. Rather, they engage in questionable calculations and based thereon allege that the actual percentage rate at consummation of the transaction was 14.234%. However, the Truth in Lending disclosure statement *signed by plaintiff at consummation of the loan,* of which this court make take judicial notice, contradicts plaintiffs' allegations and reflects that the annual percentage rate for the loan was 8.354%. . . .[6] Nowhere in the TAC do plaintiffs allege that this percentage rate exceeded the Treasury securities rate by more than eight percentage points. For these reasons, plaintiffs' claim for predatory lending fails."

---

6    At this point, MI cited to its request for judicial notice, which the trial court granted.

13

MI's arguments as to why the subject loan is not a covered loan presumably provide the basis for the trial court's ruling that that "the allegations of the complaint, together with matters as to which the Court takes judicial notice, appear to establish that the subject loan is not a 'covered loan.' " Because plaintiffs have not addressed any of these arguments, we will not disturb the court's order sustaining SFR's demurrer to the first cause of action without leave to amend on the ground that plaintiffs conceded that the first cause of action is barred by the court's prior determination that the subject loan is not a covered loan.

IV. *Second Cause of action for Fraud*

" ' "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173-174.) " 'In California, fraud must be pled specifically; general and conclusory allegations do not suffice.' " (*Id.* at p. 184.) The trial court sustained MERS's and SFR's demurrers to plaintiffs' fraud cause of action on the grounds that plaintiffs failed to plead fraud with sufficient specificity and failed to allege facts establishing that they reasonably relied on any representations made by MERS or SFR.

In their fraud cause of action against MERS, plaintiffs allege that MERS falsely represented that as nominee for MI, it was selling all beneficial interest in the subject note and deed of trust to FDIC. Plaintiffs allege this representation was false because MI had previously sold all beneficial interest that it held in the note and deed of trust, and had no interest for MERS to sell to FDIC. Plaintiffs do not allege any specific act taken in

14

reliance on MERS's alleged misrepresentation. They simply allege: "Plaintiffs, the [g]eneral [p]ublic and the San Diego County Recorder's Office did in fact rely on this representation, to the ultimate detriment of Plaintiffs." Regarding damages, plaintiffs allege that they "suffered the specific damage of being misled, confused and totally without means to actually contact the entity who held the beneficial interest in the [note] and [deed of trust] for the purposes of requesting and potentially receiving the required modification of the [note] terms and conditions." Plaintiffs then allege that they suffered damages in an amount to be proved at trial, including reasonable attorney fees and costs, and "further suffered equitable harm for which legal damages are insufficient."

In their fraud cause of action against SFR, plaintiffs allege that the notice of default that SFR recorded contains the following false written representations: (1) Quality was the original trustee, duly appointed substitute trustee or agent for the beneficiary or trustee; (2) Quality was the "duly appointed trustee"; (3) SFR was the creditor and beneficiary; (4) plaintiffs had not paid the installments of principal and interest that became due on May 1, 2009, and all subsequent installments of principal and interest through the date of the notice of default; and (5) that SFR, the present beneficiary under the notice of default, delivered to Quality "all documents evidencing obligations secured by the [d]eed of [t]rust, meaning the original promissory note."[7]

---

7      Plaintiffs allege that "[t]he true facts were that: [¶] i. QUALITY was not the trustee or the agent for the beneficiary or trustee, rather a simple fraudulent third-party imposter, colluding with others to steal first the beneficial interest to the NOTE and DOT, then actual possession of the Subject Property; [¶] ii. QUALITY was not the 'duly appointed Trustee' because SFR had no authority to appoint them, and Chicago Title still remains the Trustee;

15

Plaintiffs allege that they justifiably relied on SFR's false representations "insofar as QUALITY and SFR were 'official' appearing companies, filing an official document, and plaintiffs had no information upon which to make any determination on the truth or falsity of their claims." Under the heading "Damages," plaintiffs alleged that they "suffered the specific damage of being absolutely confused about the true owner of the debt alleged against Plaintiff Petty through the [note], and were prevented from contacting and possibly working out modification terms with the actual entity entitled to payments on the [note]." Plaintiffs then allege that they suffered damages in an amount to be proved at trial, including reasonable attorney fees and costs, and "further suffered equitable harm for which legal damages are insufficient."

We conclude that the trial court properly sustained MERS's and SFR's demurrers to plaintiffs' fraud cause of action on the ground that plaintiffs failed to sufficiently plead the element of reliance. "Each element in a cause of action for fraud . . . must be factually and specifically alleged. [Citation.] The policy of liberal construction of pleadings is not generally invoked to sustain a misrepresentation pleading defective in any material respect. [Citation.] Thus, the mere assertion of 'reliance' is insufficient. *The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of*

_____

[¶] iii. SFR was NOT the Creditor or Beneficiary; [¶] iv. When the FDIC took over as Receiver for IndyMac, it never received interests in the NOTE from MERS as nominee for MI, nor any valid sale of the interests in the NOTE to any other entity; [¶] v. Defendant FDIC as Receiver, thus executed ADOT #2 which contained language regarding ONLY the DOT, not the NOTE, because it never acquired any interests in the NOTE." These allegations of "true facts" consist largely of unsupported contentions, deductions, and legal conclusions that we do not accept as true on demurrer. (*Moore v. Regents of University of California, supra,* 51 Cal.3d at p. 125.)

*actual reliance*." (*Cadlo v. Owens-Illinois, Inc., supra,* 125 Cal.App.4th at p. 519, italics added.)  That is, "[t]he plaintiff must allege *actions*, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations." (*Small v. Fritz Companies, Inc., supra,* 30 Cal.4th at p. 184, italics added.)  A complaint fails to plead a cause of action for fraud when it fails to identify any specific act taken in reliance on the alleged misrepresentation or nondisclosure.  (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 433 [nondisclosure].)

Plaintiffs do not allege any action that Petty took in reliance on the alleged false representations by MERS and SFR.  Plaintiffs' fraud count against MERS merely contains the conclusory allegation that plaintiffs and the general public relied on MERS's allegedly false representation that MERS, as nominee for MI, was selling all beneficial interest in the subject note and deed of trust to FDIC.  Plaintiffs' fraud count against SFR similarly contains the conclusory allegation that "Plaintiffs justifiably relied upon [SFR's alleged misrepresentations], insofar as QUALITY and SFR were official appearing companies, filing an official document, and Plaintiffs had no information upon which to make any determination on the truth or falsity of their claims."  Plaintiffs' failure and inability to allege any *action* taken in reliance on the alleged false representations by MERS and SFR is fatal to their fraud claims.

Plaintiffs' fraud claims are also defective because plaintiffs have not sufficiently alleged the element of damages.  An allegation of damages in a *definite amount* is essential to stating a cause of action for fraud.  (*Abbot v. Stevens* (1955) 133 Cal.App.2d 242, 247).  " ' " 'Misrepresentation, even maliciously committed, does not support a cause of action

17

unless the plaintiff suffered consequential damages.' " ' [Citation.] . . . ' "If the existence . . . of damages alleged in a fraud pleading is "too remote, speculative or uncertain," then the pleading cannot state a claim for relief." ' " (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1064; *Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1132 [" 'Generally, damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.' "].)

In their fraud counts against both MERS and SFR, plaintiffs' main damage allegation is that plaintiffs were confused and unable to contact the true beneficial owner of the subject note for the purpose of *possibly* working out a loan modification. Plaintiffs then add the allegation that they suffered damages in an amount to be proved at trial. The former allegation is insufficient to support a fraud cause of action because it is speculative and uncertain, and the latter allegation is insufficient because it is conclusory. Both allegations are insufficient because they are not allegations of pecuniary damages in a definite amount. The trial court properly sustained MERS's and SFR's demurrers to the second cause of action for fraud without leave to amend.

V. *Fourth Cause of Action for Unlawful Business Practices*

The third amended complaint states that the fourth cause of action for unlawful business practices under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)[8]

---

[8] All subsequent statutory references are to the Business and Professions Code unless otherwise specified.

18

(UCL)[9] is brought against all defendants.  In their opening brief, plaintiffs do not challenge the court's order sustaining MERS's demurrer to the fourth cause of action; they challenge the dismissal of the fourth cause of action only as to defendants MI and SFR. Because, as we discussed, MI is not a party to this appeal, we will review the court's dismissal of the fourth cause of action as to SFR only.

Section 17200 defines unfair competition as " 'any unlawful, unfair or fraudulent business act or practice . . . .' "  Thus, there are three varieties of unfair competition under the statute: practices that are unlawful, unfair or fraudulent.  (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311-312.)  "A plaintiff may pursue a UCL action in order to obtain either (1) *injunctive relief*, 'the primary form of relief available under the UCL' or (2) *restitution* ' "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." ' " (*Jenkins, supra,* 216 Cal.App.4th at p. 520.)

In their fourth cause of action, plaintiffs allege that SFR, and all of the other defendants, committed acts of unfair and unlawful competition by failing to comply with statutory consumer protections under a long list of statutes.  Plaintiffs also charge SFR and the other defendants with actions allegedly constituting unfair conduct, including fraudulent conduct, predatory lending, and attempting to foreclose without the right to do so.  The trial court sustained SFR's demurrer to the fourth cause of action on the ground

_____

9    "Sections 17200 through 17210 . . . do not have a specific statutory title; however, California courts have referred to these statutes as the unfair competition law (UCL)." (*Jenkins v. JP Morgan Chase Bank* (2013) 216 Cal.App.4th 497, 520 (*Jenkins*).)

19

that plaintiffs failed to allege facts establishing that they have standing to bring their UCL claim. In support of its determination that plaintiffs lack standing, the court cited *Jenkins* and stated: "In particular, plaintiffs have failed to allege facts establishing a causal connection between any alleged misconduct on the part of SFR . . . and any economic injury to plaintiffs."

The trial court presumably based its standing determination on the discussion of standing under section 17204[10] in *Jenkins*. The *Jenkins* court explained that to meet the private standing requirements of section 17204, the plaintiff must " '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.' " (*Jenkins*, *supra,* 216 Cal.App.4th at p. 521.) The *Jenkins* court concluded that the plaintiff suing for wrongful foreclosure in that case sufficiently satisfied the economic injury prong of section 17204 by alleging that the economic injury she had suffered was the impending foreclosure of her home. However, the *Jenkins* court concluded that the plaintiff could not satisfy the second prong of section 17204's standing requirements—i.e., she could not show a causal connection between the impending nonjudicial foreclosure of her home and the unfair and unlawful acts allegedly committed by the defendants. (*Jenkins, supra,* at pp. 522-523.) The plaintiff in *Jenkins* admitted in her pleading in the trial court and on appeal that she

_____

10      Section 17204 authorizes an action under the UCL to be prosecuted "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."

20

had defaulted on her loan. The *Jenkins* court observed that it was "indisputable that [her] default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected [her] home to nonjudicial foreclosure." (*Id.* at p. 523.) Consequently, the court concluded that even if the plaintiff's UCL cause of action alleged facts indicating that the defendants' "actions violated at least one of the UCL's three unfair competition prongs (unlawful, unfair, or fraudulent), [the plaintiff's complaint could not] show any of the alleged violations have a causal link to her economic injury." (*Ibid.*)

Although plaintiffs in the present case have not expressly admitted that Petty defaulted on the subject loan, they allege that a notice of default on the loan was recorded, and they attached a copy of the notice of default to the third amended complaint. Further, plaintiffs do not claim that the loan is *not* in default. Thus, they have effectively admitted that Petty defaulted on the loan and, as in *Jenkins*, it is "indisputable that [her] default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected [her] home to nonjudicial foreclosure." (*Jenkins, supra,* 216 Cal.App.4th at p. 523.) The allegations of the third amended complaint show that Petty entered into an onerous loan agreement that caused her to suffer economic harm, but the undisputed facts underlying all of plaintiffs' causes of action are that Petty defaulted on the subject loan and that she is facing nonjudicial foreclosure. The alleged actions of Ace and MI may have caused Petty to enter into an ill-advised loan transaction, but SFR's initiation of the nonjudicial foreclosure proceedings that gave rise to this lawsuit was fundamentally the result of Petty's default on the subject

21

loan. Thus, like the plaintiff in *Jenkins*, plaintiffs cannot show a causal link between any action taken by SFR and their alleged economic injury. Accordingly, the trial court properly sustained SFR's demurrer to the fourth cause of action without leave to amend.

VI. *Fifth Cause of Action for Attempted Wrongful Foreclosure*[11]

Although the third amended complaint states that the fifth cause of action is against SFR, FDIC and Quality, in their argument heading regarding this cause of action, plaintiffs identify only "Respondent MI."[12] Moreover, even if we accept the dubious proposition that a cause of action for *attempted* wrongful or fraudulent foreclosure is cognizable under California law, plaintiffs' discussion regarding the fifth cause of action does not explain what the elements of the cause of action are or how plaintiffs sufficiently pled them. Plaintiffs simply assert that "the phrase is self-explanatory" and complain that the "fatal flaws with the 'dates' and other serious issues appearing on the face of the non-judicial foreclosure documents are indicative of another 'standard' mortgage industry practice: the use of 'foreclosure mills' to produce the non-judicial foreclosure paperwork." Plaintiffs

---

[11]    The fifth cause of action is entitled "Attempted Wrongful Foreclosure" in the body of the third amended complaint. The caption page of the third amended complaint and plaintiffs' opening brief refer to the fifth cause of action as "Attempted Fraudulent Foreclosure."

[12]    Although SFR demurred to the fifth cause of action, the trial court did not expressly rule on SFR's demurrer to the fifth cause of action because it did not view that cause of action as having been brought against SFR. The court's order on SFR's demurrer identified all six causes of action in the third amended complaint and then stated: "Of those causes of action, plaintiffs have asserted the predatory lending, fraud, unlawful business practices and declaratory relief claims against defendant SFR . . . ." Because we review the third amended complaint de novo to determine whether it contains sufficient facts to state a cause of action (*Hernandez v. City of Pomona, supra,* 49 Cal.App.4th at p. 1497), we consider whether plaintiffs' fifth cause of action states a cognizable claim against SFR.

further assert that the language in the assignments of deed of trust "is impossible, leaving the documents and their claims fatally flawed."

Reviewing the fifth cause of action de novo, we conclude that its allegations regarding SFR amount to an impermissible preemptive judicial action by a defaulting trustor-debtor to challenge whether the party initiating the foreclosure has the authority to do so.[13] This court in *Gomes, supra,* 192 Cal.App.4th 1149, held that because Civil Code section 2924, which sets forth California's nonjudicial foreclosure procedure, does not provide the right to file a lawsuit to determine whether the entity initiating a foreclosure has the authority to do so, "there is no basis for the courts to create such a right." (*Gomes, supra,* at p. 1156; accord, *Jenkins, supra,* 216 Cal.App.4th at p. 513.) As the *Jenkins* court observed, "even if the [nonjudicial foreclosure statutes] are interpreted broadly, it cannot be said the provisions imply the authority for such a preemptive action exists, because doing so would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature." (*Jenkins, supra,* at p. 513.)

Because plaintiffs did not name MERS as a defendant in their fifth cause of action for attempted wrongful foreclosure and there is no substantive argument in plaintiffs' opening brief that they have stated such a cause of action against SFR, and because the fifth cause of action constitutes an impermissible challenge to SFR's authority to nonjudicially foreclose on the subject property, we will not disturb the order sustaining

---

[13]    Among other things, plaintiffs allege in the fifth cause of action that "[n]either SFR nor Q[uality] was the 'Lender' regarding the [note] at the time of the creation, execution, mailing and recordation of the [notice of default][;]" and that "SFR has no interest in the [note]."

23

MERS's and SFR's demurrers to the entire third amended complaint, including the fifth cause of action, without leave to amend.

VII.  *Sixth Cause of Action for Declaratory Relief*

As to MERS and SFR specifically, in their sixth cause of action for declaratory relief, plaintiffs request a judicial declaration that "MERS had no authority, right, title or interest to sell all beneficial interest in the [note] and [deed of trust] on behalf of MI in 2009[,] and that "[i]t was unfair and illegal for SFR . . . to cause the [notice of default] to be created, executed, mailed and recorded without SFR being the [c]reditor and [b]eneficiary with regard to the [note] and [deed of trust]."  In the third amended complaint's prayer for relief under the sixth cause of action, plaintiffs request a declaration that SFR has no "estate, right, title or interest in the [s]ubject [p]roperty[,]" and a judgment enjoining SFR "from claiming any estate, right, title or interest in the subject property[.]"

The court sustained MERS's and SFR's demurrers to the sixth cause of action for declaratory relief on the ground that plaintiffs failed to allege facts establishing the existence of an "actionable controversy" between plaintiffs and either defendant.  The court's ruling was likely based on the *Jenkins* court's determination that the cause of action for declaratory relief in *Jenkins* was properly dismissed on demurrer because the plaintiff had failed to show that an actual controversy existed between her and the defendants within the meaning of Code of Civil Procedure section 1060.[14]  The *Jenkins* court rejected the

14      Code of Civil Procedure section 1060 provides, in relevant part:  " Any person interested under a written instrument . . . or under a contract, or who desires a declaration of his or her rights or duties with respect to another . . .  may, in cases of actual controversy

24

plaintiff's argument that there was an actual controversy as to whether the defendants had an enforceable secured interest in her home. Regarding the plaintiff's "attempts to construct a dispute between herself and Defendants with regard to the alleged improper transfer of the promissory note during the securitization process[]" (*Jenkins, supra,* 216 Cal.App.4th at p. 514), the *Jenkins* court decided that as an unrelated third party to the alleged securitization, the plaintiff lacked standing to enforce any agreements relating to such transactions. (*Id.* at p. 515.)

The *Jenkins* court further concluded that "even if any subsequent transfers of the promissory note were invalid, [plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note. It is also possible to imagine one or many invalid transfers of the promissory note may cause a string of civil lawsuits between transferors and transferees. [Plaintiff], however, may not assume the theoretical claims of hypothetical transferors and transferees for the purposes of showing a 'controversy of concrete actuality.' " (*Jenkins, supra,* 216 Cal.App.4th at p. 515.)

The same analysis applies here. Plaintiffs' contend that there is an actual controversy between them and MERS based on their claims that the first assignment of deed of trust to MERS "constitutes fraud, is void, and as a void instrument forms the quintessential 'break' in the chain of title claims by SFR." Plaintiffs argue that there is an

relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties . . . , including a determination of any question of construction or validity arising under the instrument or contract."

25

actual controversy between them and SFR based on SFR's "claiming to be the creditor, lender, beneficiary, and entity with the right to foreclose . . . ."  Thus, like the cause of action for declaratory relief in *Jenkins*, plaintiffs' request for declaratory relief as to MERS and SFR is based on alleged invalid transfers of the beneficial interest in the subject note.  However, as the *Jenkins* court observed, even if any transfers of the subject note were invalid, plaintiff Petty is not the victim of such invalid transfers because the transfers did not affect her obligations under the note.  To the extent plaintiffs' invalid transfer claims have merit, the individual or entity aggrieved by an invalid transfer would be a third party "that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note."  (*Jenkins, supra,* 216 Cal.App.4th at p. 515.)  Plaintiffs' obligations under the subject note remain unchanged, regardless of whether SFR presently holds the beneficial interest in the note.  Accordingly, the trial court properly sustained MERS's and SFR's demurrers to the sixth cause of action for declaratory relief on the ground that plaintiffs failed to allege facts establishing the existence of an actual controversy.

The sixth cause of action also lacks merit as to SFR because, like the fifth cause of action, it constitutes an impermissible preemptive judicial action by a defaulting trustor-debtor to challenge whether SFR has the authority to pursue the subject nonjudicial foreclosure proceedings.  (*Gomes, supra,* 192 Cal.App.4th at p. 1156; accord, *Jenkins, supra,* 216 Cal.App.4th at p. 513.)

26

## DISPOSITION

The judgments entered on September 5, 2013 and September 12, 2013 are affirmed.

Respondents MERS and SFR are awarded their costs on appeal.



                                                                    AARON, J.

WE CONCUR:


BENKE, Acting P.J.


IRION, J.