Filed 1/14/16  Rupnow v. Bank of America CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARMELITA RUPNOW, | B255232 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC513212) |
| v. | |
| BANK OF AMERICA, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth A. Kwan, Judge.  Affirmed.

Stephen R. Golden & Associates and Timothy L. McCandless for Plaintiff and Appellant.

Reed Smith LLP, Michael E. Gerst and Myles A. Lanzone for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff Carmelita Rupnow sued her home loan servicer, Bank of America, N.A. (Bank of America), the trustee of the securitized trust holding her loan, Deutsche Bank National Trust Company (Deutsche Bank), and the trustee under her deed of trust, ReconTrust Company (ReconTrust, collectively Defendants) to prevent Defendants from foreclosing on her property.  Plaintiff principally contends that Bank of America violated provisions of the California Homeowner's Bill of Rights (Civ. Code,[1] § 2923.4 et seq.) (the HBOR), in connection with denying her request for a loan modification and that all Defendants lack standing to foreclose because her original lender failed to transfer her loan to the securitized trust before the trust's closing date.  Plaintiff also claims Defendants violated the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (the UCL), by denying her a fair opportunity to obtain a loan modification.  Plaintiff appeals from the judgment of dismissal entered after the trial court sustained Defendants' demurrer without leave to amend.  The court concluded the complaint's allegations admit no violation of the HBOR occurred, California's nonjudicial foreclosure statutes do not authorize a judicial action to preempt a foreclosure, and Plaintiff failed to establish her standing to sue under the UCL.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Because this matter comes to us on demurrer, our statement of facts is based upon the allegations of Plaintiff's operative first amended complaint.  (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885; *Fontenot v. Wells Fargo Bank, N.A*. (2011) 198 Cal.App.4th 256, 264-266.)  "[W]e treat as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 178, fn. 3; *Fontenot,* at pp. 264-266.)

In September 2004, Plaintiff executed a promissory note in the amount of $650,000 in favor of her lender, America's Wholesale Lender.  The note was secured by a deed of trust on the real property at issue in this action.

---

[1]     Further statutory references are to the Civil Code, unless otherwise indicated.

On November 30, 2004, Mortgage Electronic Registration Systems, Inc., acting on behalf of America's Wholesale Lender, purported to assign the beneficial interest in Plaintiff's deed of trust to the Harborview Mortgage Loan Trust 2004-9 (the Harborview Securitized Trust). The Harborview Securitized Trust closed the same day. Plaintiff alleges this assignment was ineffective, however, because there was "no recordation of any purported interest of [Deutsche Bank, the trustee of the Harborview Securitized Trust] until 2013"—years after the Harborview Securitized Trust's closing date.

In 2008, Plaintiff attempted to refinance the loan after its interest rate adjusted to 7.625 percent. She alleges she was unable to secure refinancing "due to the faltering economy," and she was unable to sell the property because its value had depreciated below the principal amount of the loan.

In March 2009, Plaintiff requested a loan modification from her then-servicer, Countrywide Financial Corporation (Countrywide). Countrywide denied the modification. Thereafter, Bank of America became Plaintiff's loan servicer.

In February 2010, Plaintiff contacted Bank of America to inquire about federal loan modification programs to assist homeowners who are in default or likely to fall into default. A Bank of America customer service representative, Celine Eckelber, told Plaintiff she would receive a package containing loan modification materials within three or four weeks. Plaintiff never received the package.

In September 2010, Plaintiff spoke with another Bank of America customer service representative, Ebony Peters, about the status of her loan and modification options. Peters advised Plaintiff that her file had been elevated to a supervisor who would contact her. No supervisor ever contacted Plaintiff.

Plaintiff spoke with Eckelber again in June 2011 about obtaining a loan modification application package. Plaintiff related her financial information to Eckelber and Eckelber informed Plaintiff that she was eligible for a loan modification. Eckelber told Plaintiff that Bank of America would send her the application package and a supervisor would contact her shortly. Neither occurred.

In July 2012, Plaintiff submitted a loan modification application package to a Bank of America customer relations manager, Jamahl Woods. Woods had solicited the application from Plaintiff to assess her eligibility for a significant principal reduction program instituted pursuant to Bank of America's settlement with the United States Department of Justice.

In September 2012, Bank of America offered Plaintiff a modification to a 15-year loan with monthly principal and interest payments of $5,170.42 or monthly interest-only payments of $4,760.83. Plaintiff's allegations imply she did not accept the offer.

In November 2012, Plaintiff learned that her loan file had been assigned to a new customer relations manager, Nalini Behari, after Woods left Bank of America. Behari informed Plaintiff that she would need to resubmit many of the documents she had already submitted to Woods in order to be considered for a modification under the principal reduction program. Plaintiff resubmitted the documents to Behari.

On January 29, 2013, Plaintiff received a letter from Bank of America informing her that her loan modification application had been denied. The letter, dated January 25, 2013, gave the following reason for the denial: "Your loan is not eligible for a modification because we cannot create an affordable payment without changing the terms of your loan beyond the limits of the program."[2] The letter stated that Plaintiff had "30 calendar days from the date of this letter" to appeal the decision and "provide information to show why [Bank of America's] determination of eligibility was in error."

On January 31, 2013, Plaintiff spoke with Behari about the status of her modification application. Behari informed Plaintiff that the modification had been denied, but did not elaborate on the reason for the denial. Behari told Plaintiff she could contact Bank of America's appeal department.

---

[2] The letter discloses that "the program" refers to "the new principal forgiveness modification program [Bank of America] recently introduced as a result of the U.S. Department of Justice and State Attorneys General national mortgage settlement with major servicers, including Bank of America, N.A."

4

Later that day, Plaintiff spoke with Craig Jackson in the appeal department. Jackson indicated the denial was related to the property's value and advised Plaintiff that she needed to obtain an appraisal within 48 hours to support her appeal.

On February 5, 2013, Plaintiff visited a local Bank of America office to meet with another customer relations manager, Mel Decker. Decker told Plaintiff to ignore Jackson's instructions and to rely solely on her. Later that day, Shanta Wiggins from Bank of America's appeal department called Plaintiff to discuss her appeal. Plaintiff alleges Wiggins was "very aggressive and acted like a debt collector, and she refused to provided a written explanation for Plaintiff's denial." On February 6, 2013, Plaintiff faxed a notice to Wiggins cancelling her appeal and indicating that she intended to deal solely with Decker.

On February 11, 2013, Plaintiff received a letter from Bank of America confirming that her loan file had been assigned to Decker. On February 20, 2013, Plaintiff received another letter advising her that her file had been re-assigned to customer relations manager Christopher Crowley. The letter explained that "[i]n most cases, [Bank of America] assign[s] new Customer Relations Managers when the associate you previously worked with has moved to another position or in order to make sure you are assigned to the associate who specializes in your loan type."

On March 3, 2013, ReconTrust posted a Notice of Trustee Sale on Plaintiff's property, noticing a sale date of April 25, 2013. Plaintiff does not allege the sale occurred, and Plaintiff's allegations indicate she still possess the property.

On March 26, 2013, Plaintiff's legal counsel submitted a third loan modification package to Crowley on Plaintiff's behalf. On April 26, 2013, the modification application was denied.

On May 31, 2013, Bank of America executed a Corporation Assignment of Deed of Trust, assigning all beneficial interest under Plaintiff's deed of trust and promissory note to Deutsche Bank, as trustee for the holders of the Harborview Securitized Trust.

On June 25, 2013, Plaintiff filed her initial complaint against Defendants, wherein she asserted seven causes of action for: (1) wrongful foreclosure; (2) unfair, fraudulent practices; (3) breach of contract; (4) negligence; (5) cancellation of instrument; (6) intentional infliction of emotional distress; and (7) violations of the HBOR. Defendants filed a general demurrer to each claim, arguing Plaintiff failed to allege sufficient facts to state a cause of action. The trial court sustained the demurrer with leave to amend.

On October 23, 2013, Plaintiff filed her operative first amended complaint. The complaint asserts seven cause of action for: (1) violation of section 2923.7 (the HBOR's single point of contact provision); (2) violation of section 2923.6, subdivision (f) (the HBOR's requirements for written denial of a loan modification); (3) violation of section 2923.6, subdivision (c) (the HBOR's dual tracking prohibition); (4) wrongful foreclosure; (5) violation of section 2924.17, subdivision (a) (the HBOR's accuracy requirements for foreclosure documents); (6) cancellation of instrument (pertaining to the Corporation Assignment of Deed of Trust); and (7) violation of Business and Professions Code section 17200 et seq. Defendants again responded with a general demurrer to each cause of action.

On February 11, 2014, the trial court sustained Defendants' demurrer without leave to amend. With respect to the HBOR claims, the court concluded that the alleged facts confirmed Bank of America had not violated the statute in considering and denying Plaintiff's loan modification request. Further, because the complaint also admitted that the modification was denied more than a month before Defendants commenced foreclosure, the court concluded Plaintiff could not state a claim for dual tracking. As for the wrongful foreclosure, section 2924.17, and cancellation of instrument claims, the court reasoned that all three claims amounted to an attempt to preempt a nonjudicial foreclosure by challenging Defendants' standing to pursue that remedy under the deed of trust's power to sale. Citing controlling appellate authority, specifically *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497 (*Jenkins*), the court concluded Plaintiff's preemptive judicial action was not permitted under California's nonjudicial

6

foreclosure statutes.  Finally, insofar as Plaintiff predicated her Business and Professions Code section 17200 claim on the asserted HBOR violations, the court concluded she failed to allege unfair, fraudulent or unlawful conduct and failed to establish her standing to sue under the UCL.  The court entered a judgment of dismissal in favor of Defendants.  Plaintiff timely appealed.

## DISCUSSION

1.     *Standard of Review*

"When the trial court sustains a demurrer, we review the complaint de novo to determine whether it alleges facts stating a cause of action on any possible legal theory. [Citation.]  ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " [Citations.]'  [Citation.] 'Further, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." [Citations.]' "  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490.)

"The plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.]  We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings.  [Citation.]"  (*Martin v. Bridgeport Community Assn., Inc*. (2009) 173 Cal.App.4th 1024, 1031.)

"When a demurrer is sustained without leave to amend, we also must decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.)  "The plaintiff bears the burden of proving there is a reasonable possibility of amendment.  [Citation.] . . . [¶]  To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'  [Citation.]  The assertion of an abstract right to amend does not satisfy this

7

burden.  [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action.  [Citations.] Allegations must be factual and specific, not vague or conclusionary.  [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44 (*Rakestraw*).)

   2. *The Complaint Fails to State a Claim for Relief under the Homeowner's Bill of Rights*

  In her first, second, and third causes of action, Plaintiff asserts Defendants violated the California Homeowner's Bill of Rights, Civil Code section 2923.4 et seq.[3] by (1) failing to provide a "single point of contact" for communications regarding her loan modification; (2) failing to adequately specify the reason for denying the application; and (3) commencing nonjudicial foreclosure while her modification application was pending. Like the trial court, we conclude the complaint's allegations fail to establish the alleged violations and Plaintiff has not shown she could amend her complaint to change the legal effect of her pleadings.

---

[3] "In 2012, new legislation imposed specific limitations regarding the nonjudicial foreclosure of owner-occupied residential real property."  (*Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 749, citing Stats. 2012, ch. 86 & Stats. 2012, ch. 87.) "Although the Legislature did not give the legislation a title, the Governor in his signing statement, and courts and commentators, have referred to the legislation as the 'California Homeowner Bill of Rights.' " (*Monterossa,* at p. 749, fn. 1, citing *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86 & fn. 14; Koo, Saving the California Homeowner Bill of Rights from Federal Banking Preemption (2013) 48 U.S.F. L.Rev. 189; Jacobs & Stern, Rights in Foreclosure (Jan. 2013) 35 L.A. Lawyer 24, 25–26 & fn. 32.)

a.	*The allegations admit Defendants provided Plaintiff a "single point of contact"*

The HBOR mandates that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." (§ 2923.7, subd. (a).)  A " 'single point of contact' " is defined as "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described" in the statute. (§ 2923.7, subd. (e).)  Those responsibilities include "[c]ommunicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options"; "[c]oordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application"; and "[e]nsuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any." (§ 2923.7, subd. (b)(1), (2) & (4).)[4]  Where the single point of contact consists of a team, the mortgage servicer must "ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." (§ 2923.7, subd. (e).)

Plaintiff maintains that Bank of America, her loan servicer, violated section 2923.7 by assigning her "multiple 'single' points of contact."  In that regard, her complaint alleges she communicated with "at least" seven different Bank of America representatives regarding her request for a loan modification.  However, as the trial court correctly reasoned, this allegation alone does not establish a violation, because the statute authorizes the loan servicer to establish a "team of personnel" as the single point of

---

[4]	The single point of contact also must have access to "current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative" and "individuals with the ability and authority to stop foreclosure proceedings when necessary." (§ 2923.7, subd. (b)(3) & (5).)

9

contact, so long as each member of the team is knowledgeable about the status of the modification process and has the authority to perform the responsibilities set forth in the statute.  While Plaintiff alleges she spoke with numerous Bank of America representatives about her loan modification, nowhere does she allege that these individuals failed to perform the tasks specified in section 2923.7, subdivision (b).  Quite the contrary, the complaint's allegations admit that the various representatives communicated with Plaintiff about the documentation she must supply, notified her of missing documentation, advised her of her application's status, and ultimately informed her of the reason the modification had to be denied.  In view of those allegations, the court properly sustained Bank of America's demurrer to the section 2923.7 claim.

On appeal, Plaintiff argues the court misapplied the concept of a "team," observing "[a] team is only a 'team' if, and when, it speaks with one unified voice on all matters it is confronted with."  To be sure, Plaintiff's observation is generally consistent with the requirement's purpose, which, broadly speaking, is "to prevent borrowers from being given the runaround, being told one thing by one bank employee while something entirely different is being pursued by another." (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 905.)  However, there is nothing alleged in the complaint from which to infer that is what happened here.  All we are told in the complaint is that Plaintiff spoke with multiple customer relations managers while under evaluation for a loan modification and, at one point, she was required to resubmit some documentation when the manager she had been working with left Bank of America.  While this was no doubt a frustrating request to add to an already stressful process, it does not support the charge that Bank of America gave Plaintiff the runaround or otherwise denied her the

10

means to be fairly evaluated for a loan modification.[5]  Nor does Plaintiff supply any facts on appeal to suggest her complaint could be amended to allege otherwise.  Plaintiff has not demonstrated the court abused its discretion by denying leave to amend.

      b.    *Defendants' letter adequately specifies the reason for denying Plaintiff's loan modification application as a matter of law*

Under the HBOR, "[f]ollowing the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:  [¶]  (1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.  [¶]  (2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.  [¶]  (3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.  [¶]  (4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.  [¶]  (5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options."  (§ 2923.6, subd. (f).)

---

[5]    After her modification application was denied, Plaintiff alleges she was in communication with both Bank of America's appeal department and a new customer relations manager concerning the denial.  However, the complaint admits that Plaintiff initiated these separate lines of communication herself when she visited a local Bank of America office after speaking with a different representative in the appeal department.  In any event, there is no allegation that either the appeal department or the new customer relations manager failed to perform any of the responsibilities enumerated in section 2923.7, subdivision (b), which principally concern having access to information about the borrower, her loan, the modification programs available to the borrower, and access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

11

According to the complaint's allegations, on January 25, 2013, Bank of America sent Plaintiff a letter notifying her that her loan modification request had been denied. The letter, which Plaintiff also attached as an exhibit to her complaint, states the following reason for the denial: "Your loan is not eligible for a modification because we cannot create an affordable payment without changing the terms of your loan beyond the limits of the program." The letter advised Plaintiff she had "30 calendar days from the date of this letter" to appeal the decision and "provide information to show why [Bank of America's] determination of eligibility was in error." It also informed Plaintiff of "other modification options" and "alternatives to foreclosure," including a short sale and deed in lieu of foreclosure.

In her complaint, Plaintiff asserts Bank of America's letter failed to provide the explanation required by the HBOR because it was "a single sentence that does not give any true explanation of the reasons for [the] denial." She adds that Bank of America "failed to explain the limits of the 'program', [or] how the terms of Plaintiff's loan would have to be changed to be within the limits." Bank of America countered in its demurrer that the explanation complied with the HBOR, which, except in the cases of denials based on "investor disallowance" or "a net present value calculation" (§ 2923.6, subd. (f)(2) & (3)),[6] requires only "a written notice to the borrower identifying the reasons for denial" and "[t]he amount of time from the date of the denial letter in which the borrower may request an appeal of the denial." (§ 2923.6, subd. (f)(1).) The trial court agreed that the

---

[6] Net present value refers to the lender's basis for calculating the amount of anticipated recovery through either a loan modification/workout plan or foreclosure. The HBOR declares that "a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply: [¶] (1) The loan is in payment default, or payment default is reasonably foreseeable. [¶] (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a *net present value* basis." (§ 2923.6, subd. (a), italics added.) Here, Bank of America's stated reason for denying Plaintiff's modification request concerned the limits of its principal reduction program, not a net present value calculation.

12

"letter contains a sufficient explanation for denial of Plaintiff's loan modification." We reach the same conclusion. Nothing in the statute requires the loan servicer to provide additional information underpinning its reasons *in the denial letter*—written notice "identifying the reasons for denial" satisfies the statutory mandate. (*Ibid.*) As for an explanation concerning the "limits of the 'program'," Plaintiff does not allege that Bank of America concealed this information from her, either in the connection with considering her loan for a modification or during the appeal period following the denial.

On appeal, Plaintiff implicitly argues the reason Bank of America gave for the denial was not true. She contends the court erred by sustaining the demurrer without leave to amend because "what the bank could do with respect[] to 'the limits of the program' as stated within the letter is a triable issue of fact to be determined by evidence." The problem with this argument is Plaintiff fails to state the facts she could allege to create a triable issue. For instance, Plaintiff does not state what she could allege about the amount she currently owes on the loan or her current monthly income and expenses as these pertain to an "affordable payment." Nor does she allege what the limits of the modification program are—information that is presumably available to her upon request to Bank of America. Without these minimum allegations, Plaintiff fails to show that a triable issue indeed exists. As the appellant, this was her burden. Her conclusory argument, without specific factual allegations to support it, does not establish reversible error. (See *Rakestraw, supra,* 81 Cal.App.4th at pp. 43-44.)

          c.      *The allegations admit Plaintiff's loan modification application was no longer pending when Defendants initiated nonjudicial foreclosure*

As part of its regulations to ensure borrowers are considered for, and have a meaningful opportunity to obtain, loan modifications or other alternatives to foreclosure (see § 2923.4, subd. (a)), the HBOR prohibits a practice known as "dual tracking," which occurs when a bank forecloses on a loan while negotiating with the borrower to avoid foreclosure. (See *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.) The relevant statute provides, "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a

13

mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." (§ 2923.6, subd. (c).) This prohibition persists until "[t]he mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired." (§ 2923.6, subd. (c)(1).) "In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer [is not] obligated to evaluate applications from borrowers who have already been evaluated . . . , unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." (§ 2923.6, subd. (g).)

Notwithstanding the fact, admitted by Plaintiff's complaint, that her loan modification application had been denied as of January 25, 2013, Plaintiff insists on appeal, as she did in the trial court, that Defendants engaged in the prohibited practice of dual tracking when they recorded a notice of trustee sale in early March 2013. Plaintiff premises the assertion on her related claim that Bank of America's January 25, 2013 letter failed to provide sufficient reasons for denying her modification application under the HBOR. Because the letter was "defective" in Plaintiff's view, she maintains her modification application was still pending when Defendants recorded the notice of trustee sale. The trial court rejected this logic, citing its prior determination that the letter satisfied the HBOR's requirements. We agree with the court's analysis.

As discussed in the previous section, Plaintiff failed to allege sufficient facts to demonstrate the January 25, 2013 letter was "defective" or otherwise ineffective to establish her loan modification application had been denied as of that date. Because this flawed premise undergirds her assertion that the application was still pending when Defendants recorded the notice of trustee sale, there likewise is no factual basis for her dual tracking claim. The trial court properly sustained Defendants' demurrer without leave to amend.

14

3.      *The Complaint's Preforeclosure Claims Challenging Defendants' Standing to Foreclose Are Not Authorized by California's Nonjudicial Foreclosure Statutes*

Plaintiff's fourth, fifth and sixth causes of action for wrongful foreclosure, violation of section 2924.17, and cancellation of instrument, respectively, each advance what is essentially the same legal theory and request what is at bottom the same relief. Each claim is premised on allegations that the Harborview Securitized Trust closed on November 30, 2004, yet the Corporation Assignment of Deed of Trust, through which the trust purportedly received the beneficial interest in Plaintiff's loan, was not recorded until May 31, 2013. Due to this alleged defect in the securitization process, Plaintiff seeks to cancel the Corporation Assignment of Deed of Trust and thereby preclude Defendants from exercising the deed of trust's foreclosure remedy. Consistent with recent authorities rejecting similar claims, we conclude these allegations are insufficient to state a preemptive cause of action to stop or delay a nonjudicial foreclosure sale.[7]

---

[7]     While Plaintiff's wrongful foreclosure cause of action expressly seeks to preclude Defendants from foreclosing on her property, the section 2924.17 and cancellation of instrument claims seek the same relief by a slightly more circuitous route. Section 2924.17, subdivision (a) provides that an assignment of a deed of trust must "be accurate and complete and supported by competent and reliable evidence." Because of the alleged defect in securitization, Plaintiff claims the Corporation Assignment of Deed of Trust violated section 2924.17, and, hence, Defendants cannot rely on the assignment to institute foreclosure proceedings. With respect to her cancellation of instrument claim, Plaintiff similarly seeks to preclude Defendants from foreclosing on her loan by asserting the Corporation Assignment of Deed of Trust should be cancelled due to the alleged defect in securitization. Because "we look beyond the claim's label, which is not dispositive when reviewing a trial court's sustaining of a general demurrer" and focus instead on the claim's " 'actual gravamen' " and the " 'facts alleged,' " our analysis of all three claims will necessarily converge on the issue of whether the alleged facts are sufficient to preempt a foreclosure sale on any cognizable legal theory. (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1595, italics omitted.)

15

"The argument that a defendant lacks standing to foreclose because of an improper securitization process has recently become particularly popular." (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 741 (*Kan*).) In *Kan*, the plaintiff sought to amend his complaint to state a preforeclosure quiet title claim based on the allegation that his lender's nominee transferred his deed of trust to a securitized investment trust "after the trust closed." (*Ibid.*) Based on this allegation, the plaintiff argued he could assert a viable claim to quiet title because the "attempted transfer to the investment trust was therefore void," and the successor beneficiary and trustee thus had "no right, title, or interest in the property" upon which to foreclose. (*Ibid.*) The Court of Appeal rejected the proposed amendment, concluding "California's nonjudicial foreclosure statutes provide[d] [the plaintiff] with no basis to [preemptively] challenge the authority of the entity initiating the foreclosure process." (*Id.* at p. 745.)

In reaching this conclusion, the *Kan* court relied principally upon *Jenkins, supra,* 216 Cal.App.4th 497. Much like Plaintiff in the instant case, the plaintiff in *Jenkins* asserted that the defendants—the successor beneficiary under the plaintiff's deed of trust, the successor trustee, and the acting trustee of the securitized investment trust—lacked authority to initiate a nonjudicial foreclosure because they failed to comply with certain terms of the investment trust's pooling and servicing agreement when they securitized the plaintiff's loan. (*Id.* at p. 510.) The *Jenkins* court rejected the plaintiff's claim, observing that the claim relied on the false premise that a trustor-debtor has a "right to bring a preemptive judicial action to determine whether [the beneficiary, trustee or any other authorized agent under a deed of trust] ha[s] the authority to initiate nonjudicial foreclosure on her home." (*Id.* at pp. 512-513.) In explaining why no such right exists, the *Jenkins* court emphasized that California's nonjudicial foreclosure statutes (§ 2924 et seq.) provide a " ' comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust' " (*Jenkins,* at p. 508), and nothing within that framework imposes " 'the additional requirement' that the foreclosing entity must 'demonstrate *in court* that it is authorized to initiate a foreclosure' before the foreclosure can proceed" (*id.* at p. 512, quoting *Gomes v.*

16

*Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154, fn. 5 (*Gomes*)). The court held that to imply such a requirement by permitting the plaintiff to pursue her judicial action would "result in the impermissible interjection of the courts into a *nonjudicial* scheme enacted by the California Legislature" and " 'introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.' " (*Jenkins,* at p. 513, italics added.)

Importantly for our analysis, the *Jenkins* court distinguished a claim alleging " 'misconduct arising out of a nonjudicial foreclosure *sale*,' " which can give rise to a valid *post*foreclosure judicial action, from the preemptive preforeclosure action the plaintiff sought to assert. (*Jenkins, supra,* 216 Cal.App.4th at p. 510, 512, italics added.) The plaintiff's preemptive action, the *Jenkins* court explained, "does not seek a remedy for a foreclosing party's misconduct with regards to the initiation and processing of the nonjudicial foreclosure"; rather, it sought to stop or delay the foreclosure by incorporating an adjudicatory requirement into the nonjudicial framework. (*Id.* at p. 512.) That result, the court noted, "would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' . . . and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]' " (*Ibid*., quoting *Gomes, supra,* 192 Cal.App.4th at p. 1154 & fn. 5.) For these reasons, the *Jenkins* court observed, "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Id*. at p. 511.)

While Plaintiff acknowledges *Jenkins* in passing, she argues we should reject its reasoning and follow *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*) in assessing the merits of her preforeclosure claims. The plaintiff in *Glaski* brought an action for wrongful foreclosure after his home was purchased by the purported successor trustee at a nonjudicial foreclosure sale. In relevant part, the plaintiff alleged that the foreclosing entity—the trustee acting on behalf of a securitized trust formed under New York law—was not the true owner of his loan because its chain of title had been broken

17

by a defective transfer of the loan to the securitized trust after the trust's closing date. (*Id.* at p. 1084.) The *Glaski* court held these allegations were sufficient to state a wrongful foreclosure claim on the theory that the entity invoking the power to sale did not hold the plaintiff's loan. The court reasoned that New York trust law supplied a legal basis for the plaintiff's theory of recovery because, under that body of law, the securitized trust's alleged attempt to accept the transfer of the loan after the closing date established by its pooling and servicing agreement "would be void as an act in contravention of the trust document." (*Id.* at pp. 1096-1097.)

We disagree with Plaintiff's assertion that *Glaski* establishes a cognizable theory for relief based on the facts alleged in her complaint. Critically, the plaintiff in *Glaski* sought relief for wrongful foreclosure based on alleged misconduct that culminated in a foreclosure *sale*. Here, although Plaintiff attaches the "wrongful foreclosure" label to one of her claims, the complaint admits that no foreclosure sale has occurred. As explained in *Jenkins* (a case not discussed in *Glaski*), allowing Plaintiff to assert a preemptive action "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature." (*Jenkins, supra,* 216 Cal.App.4th 497, 513.) Further, it " 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy.' " (*Id*. at p. 512, quoting *Gomes, supra,* 192 Cal.App.4th 1149, 1154, fn. 5; *Kan, supra,* 230 Cal.App.4th at p. 743.) And, notably, as the court observed in *Kan*, "*Glaski* did not take issue with *Gomes*'s holding that a preforeclosure preemptive action is not authorized by the nonjudicial foreclosure statutes because it creates an additional requirement that a foreclosing entity first

18

demonstrate in court that it is entitled to foreclose." (*Kan,* at p. 743.)  In view of the admitted fact that no foreclosure sale has occurred, *Glaski* is inapposite.[8]

We conclude the holdings in *Jenkins* and *Kan* rejecting a preforeclosure lawsuit to stop or delay a nonjudicial foreclosure are directly on point and the reasoning of those cases, and the cases they relied upon, is sound.  Because California's nonjudicial foreclosure statutes afford Plaintiff no basis to judicially challenge the authority of an entity initiating the foreclosure process, the trial court properly sustained Defendants' demurrer to the fourth, fifth and sixth causes of action.

    4.    *Plaintiff Lacks Standing to Assert an Unfair Competition Law Claim*

Business and Professions Code section 17204 restricts private standing to bring a UCL action to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  To satisfy the standing requirement, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.)

---

[8]    As *Kan* also notes, several courts have criticized *Glaski*'s separate holding that the plaintiff had standing to challenge alleged violations of a pooling and servicing agreement to which he was neither a party nor third party beneficiary.  (*Kan, supra,* 230 Cal.App.4th at p. 744 [listing cases].)  One California appellate decision, since depublished by our Supreme Court's grant of review, addressed *Glaski* in the context of a preforeclosure lawsuit and explicitly disagreed with that holding.  (See *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, review granted Oct. 1, 2014, S220012 (*Keshtgar*).)  As the *Kan* court explained, although *Keshtgar* distinguished *Glaski* on the ground that it was a postforeclosure action, the *Keshtgar* court "went further . . . and rejected *Glaski*'s holding that a borrower has standing to challenge an assignment, finding that an assignment of a deed of trust and promissory note do not change the borrower's obligations and therefore do not create prejudice."  (*Kan*, at p. 745.)  Like the *Kan* court, we see no need to "wade into the issue of whether *Glaski* was correctly decided, because the opinion has no direct applicability to this preforeclosure action."  (*Kan*, at p. 745.)

In her complaint, Plaintiff identifies her economic injury as the lost opportunity to obtain a loan modification. She alleges this injury was caused by Defendants' purported "violation of various provisions of the California Homeowner Bill of Rights, including the prohibition on dual-tracking, single point of contact requirements, and loan modification denial letter requirements." As explained above, Plaintiff has failed to allege sufficient facts to support her claims that Defendants violated the HBOR provisions she invokes as the cause of her alleged economic injury. In view of this failure, Plaintiff also "cannot show any of the alleged violations have a causal link to her economic injury." (*Jenkins, supra,* 216 Cal.App.4th at p. 523.) The trial court properly sustained Defendants' demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants Bank of America, N.A., Deutsche Bank National Trust Company, and ReconTrust Company are entitled to their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



JONES, J.[*]

We concur:



EDMON, P. J.



LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.